JAMES BAIRD, as Admr. of the Estate of Debra Lynn Baird, Deceased, *et al.,* Plaintiffs-Appellees, *v.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Defendant-Appellant.

(No. 11700;

Fourth District—May 9, 1973.

266

Graham & Graham, of Springfield, for appellant.

Gillespie, Burke & Gillespie, of Springfield, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

Wrongful death actions arising from a single event—a motorcycle with driver and passenger collided with a train. Many questions are raised. The deceased were ages 19 and 17, respectively, and unmarried—a man and a woman. A verdict of $100,000 for each of their personal representatives was returned.

One issue mandates reversal and remandment—briefly stated, it is the interjection of punitive damages by way of instruction and argument. This case came about through an instruction tendered by plaintiffs which quoted substantially verbatim from an Illinois Commerce Commission Rule (Rule 205, ICC General No. 138) and the section of the implementing statute (Ill. Rev. Stat. 1971, ch. 111⅔, par. 77) which gives a cause of action for damages for a violation of such rule, and if "willful", punitive damages.

The instruction read, in summary, that there was in force in this state a certain rule of the Commerce Commission which provided that:

> "Every railroad company shall keep its right of way reasonably clear of brush, shrubbery, trees, weeds, crops and other unnecessary obstructions for a distance of at least 500 feet each way from every grade crossing where such things materially would obscure the view of approaching trains to travelers on the highway."

that if the jury decides that a party violated this rule on the occasion in question and that such violation was the proximate cause of the deaths of plaintiffs' decedents and further that they were in the exercise of due care, then the jury may "assess damages in favor of the plaintiffs and against the defendant" in accordance with a statute which provided that:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter, or thing required to be done by any rule of the Commission, issued under authority of this Act, such public utility shall be liable to the persons affected thereby for all loss, damage or injury caused thereby or resulting therefrom, and if the jury find that the act or omission was wilful, the jury may in addition to the actual damages, award damages for the sake of example, and by way of punishment."

Clearly this instruction advised the jury that they could—"may in addition"—award punitive or exemplary damages—"award damages for the sake of example, and by way of punishment". The instruction was objected to not as specifically as one might desire, but specific enough for our purposes. This punitive aspect of the award the jury might care to make was alluded to in argument—the jury was asked to say to the

people of the community by their verdict, "that the railroad should not have crossings with weeds all around them"—"That you are not going to tolerate this, that the railroad must observe the rules to prevent this slaughter not just at this but at other crossings"—"I don't believe it (the asked for amount of $400,000) would compensate them but it will be a deterrent as an example to this and every other railroad that you are not going to tolerate this".

■■ As compared with personal injury actions, recovery for death is considerably circumscribed, quantitatively (compensatory in the sense that others are compensated for their "pecuniary injuries") and qualitatively (the "others" being a narrow, but reasonable category of persons who can recover), so to speak. The Wrongful Death Statute (Ill. Rev. Stat. 1971, ch. 70, par. 1, *et seq.*) gives to the personal representative the same action for his decedent that such person would have had "if death had not ensued" and that the person responsible "shall be liable to an action for damages, notwithstanding the death of the person injured" (par. 1); damages are for the "exclusive benefit of the widow and the next of kin" and shall be "such damages as they (the jury) shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife or the next of kin"—"without limitation (in amount)". The magic words are "pecuniary injuries resulting from such death" (the quantity) and limited to the benefit of "the wife and the next of kin" (quality). A further reading of the act (par. 2) leaves no doubt that the qualitative limitation on recovery mandates the existence of spouse or next of kin because if there are none, the delimitations on recovery are for the exact amount needed (with a ceiling) to satisfy hospital, medical or surgical, and funeral expenses.

■■ We of needs repeat what has often been said by courts here and elsewhere, the Wrongful Death Act is to be strictly construed as being in derogation of the common law, and being thus a creature of statute, courts are not at liberty to engraft conditions not within the purview of the Act. The rule denying a right of recovery for death occasioned by the negligent act of another derives from dictum in the early English case of *Baker v. Bolton* (1808), 170 Eng. Reprint 1033, it being there stated by Lord Ellenborough, "* * * In a civil action * * * the death of a human being could not be complained of as an injury." Following this enunciation of the common law came the passage of Lord Campbell's Act in 1846 which created a wrongful death action. It is thus apparent that the Illinois Wrongful Death Act was intended to afford the sole and exclusive remedy in a wrongful death case. If death results from the injury sued for, the suit of the injured person abates and cannot be further prosecuted. The sole purpose of the act is to compensate the

widow and next of kin of the decedent for the injury resulting to them from his death and there is no implication, much less an expression, that the act was ever intended as a vehicle to punish those wilfully responsible for the death. *Saunders v. Schultz*, 20 Ill.2d 301, 170 N.E.2d 162; *Chicago and Rock Island Railroad v. Morris*, 26 Ill. 400.

■■ In short, the Wrongful Death Act is not subject to amendment by implication, any amendment must be by express legislative enactment. We need only quote from amongst many, *Hartray v. Chicago Rys. Co.*, 290 Ill. 85, 124 N.E. 849, in support:

> "* * * Since the right of action for death by wrongful act is wholly statutory, and must be taken with all the conditions imposed upon it, the burden being upon plaintiff to bring himself within the requirements of the statute, it is almost universally held that a provision in the statute creating the right, requiring an action thereon to be brought within a specified time, is more than an ordinary statute of limitations and goes to the existence of the right itself. It is a condition attached to the right to sue at all."

And more specifically, from an old but still authoritative case, *Conant v. Griffin*, 48 Ill. 410 (death by shooting):

> "It is apparent from the rulings, that the condition of the defendants, as to wealth, could not be taken into consideration by the jury in arriving at the measure of compensation for the pecuniary loss, for, was their wealth great or small, it did not in any manner increase or diminish the pecuniary loss sustained by the parties complaining. This action is the creature of the statute, and must be governed entirely by its provisions, and as they only provide for compensation for the pecuniary loss, the evidence should be confined exclusively to that. The damages should be compensatory or approximate thereto but not vindictive or exemplary."

■■ Assuming a violation of this rule of the Commerce Commission and that defendant railroad's "act or omission was wilful", this section of the Utilities Act does not engraft itself to par. 2 of the Wrongful Death Act and give to the personal representative an additional measure or criteria for damages, in this case, punitive damages. A violation of this rule may be evidence of negligence or indeed of wilful or wanton misconduct but the Utilities Act does not and cannot amend this statute that we must strictly construe, and thereby allow an award of punitive damages—"for the sake of example, and by way of punishment". The Wrongful Death Statute is ever so clear as to the measure of damages—they are strictly compensatory—"pecuniary injuries".

We take it that the decedent in *Conant*, had he lived, could have maintained his action for punitive damages in addition to other damages

properly awardable in an action for personal injuries—but that he lost the right to such at the moment of death—and this for the very simple reason that the statute delimits the measure of damages to compensation for pecuniary injuries and then only for a certain class of persons.

■■ The jury returned two general verdicts, each, as we have said, for $100,000. Plaintiffs say that under the evidence the verdicts were not excessive, and therefore, there is not even an implication that the award encompassed at least in part punitive damages. After all, they say, the jury was instructed that if liability was present, they "must" fix the amount which would reasonably compensate the parents for the pecuniary loss sustained", while the instruction complained of merely said that the jury "may in addition to the actual damages, award damages for the sake of example, and by way of punishment". In other words since the jury was told that they must award actual damages but had an option as to punitive damages, we should assume that they opted for the mandatory determination. But this hardly answers the question, since they were permitted "in addition" to award punitive damages. Even though the verdict may have been within the range of the testimony, the fact is that we cannot determine whether or not punitive damages did in fact make up a part of the verdict. We cannot exclude that probability. It follows that we cannot consider the instruction as harmless. An issue is made here by defendant that the verdicts are excessive, hence attributable in part, to the instruction authorizing punitive damages. Accordingly, we cannot say that the jury was not misled in arriving at the verdicts they returned, and if this is so, the matter must be retried, but only on the question of damages, for we have concluded that as to the other errors alleged they do not warrant a new trial.

■■ These alleged errors, involving the issues of contributory negligence, willful and wanton misconduct, and whether the crossing was extra hazardous, presented questions of fact which have been answered by the jury in their verdict. An additional asserted error as to the use and admission of certain photographs by plaintiff is without merit. Accordingly, since the issue of liability has been decided and the jury had a right to so decide as they did, the plaintiffs should not be burdened with a retrial of these issues. This matter is therefore remanded to the trial court with directions to enter judgment for plaintiffs on the issue of liability and a new trial is granted on the question of damages.

Reversed and remanded with directions.

CRAVEN, P. J., and SIMKINS, J., concur.