LOIS A. CHURCHILL, Indiv. and as Adm'r of the Estate of Paul Churchill, Deceased, Plaintiff-Appellant, Cross-Appellee, *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*, Defendants.—(NORFOLK & WESTERN RAILWAY COMPANY, Appellee, Cross-Appellant.)

Fourth District No. 12538

Opinion filed March 24, 1977.

GREEN, J., concurring in part and dissenting in part.

Londrigan & Potter, P. C., and Brunsman, Crain & Kenney, both of Springfield (Thomas F. Londrigan and Robert H. Brunsman, of counsel), for appellant.

Griffin, Winning, Lindner, Newkirk, Cohen, Bodewes and Narmont, of Springfield (Alfred F. Newkirk and Richard J. Durbin, of counsel), for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff, Lois A. Churchill, as administrator of the estate of her husband, Paul Churchill, deceased, and individually, filed a complaint against the defendants, Norfolk and Western Railway, James R. Cravens, and Chrysler Motors Corporation (not here involved), for wrongful death of the decedent, Paul Churchill, and for other relief. The complaint related to the death of Paul Churchill while he was riding as a passenger in the front seat of the car owned and driven by defendant Cravens. The car stalled on the tracks of the defendant railroad and was struck by one of its trains. The driver of the automobile was able to get out of the car and escaped the scene prior to the collision. The decedent, Paul Churchill, was killed in the ensuing crash.

In order to have a clear understanding of the picture presented to the jury, it is necessary that each of the five counts of the complaint that went to the jury be set forth, at least in capsule form. In count I, plaintiff sued as administrator against the railroad. The count was based upon ordinary negligence. In count II, she sued as administrator against the defendant railroad, and the allegations related to wilful and wanton misconduct. In count V, the administrator sued Cravens for wilful and wanton misconduct. By the terms of count VII, plaintiff sued the railroad in her individual capacity to recover for the funeral expenses incurred by her (Ill. Rev. Stat. 1969, ch. 68, par. 15). In this count, she sought

compensatory damages. By the terms of count VIII, plaintiff, individually, sued the railroad for compensatory and punitive damages, alleging that the railroad violated certain terms and conditions of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77), and rules of the Illinois Commerce Commission with reference to safety requirements.

The jury returned the following verdicts: on count I, the administrator as plaintiff against the railroad for negligence for compensatory damages, the jury returned a verdict of $45,000; on count II, the wilful and wanton count by the administrator against the railroad, a verdict was returned against the railroad and damages of $45,000 were fixed; on count V, there was a verdict for defendant Cravens; on count VII, the compensatory damages were fixed at $1,600 in favor of the plaintiff; on count VIII, the jury returned a verdict for $45,000 compensatory damages and $600,000 punitive damages. The trial court considered the various post-trial motions, and in a rather comprehensive memorandum opinion, allowed the verdicts under counts I, V and VII to stand, and no one appeals from the result on count V as to defendant Cravens. On counts II and VIII, the trial court entered judgments notwithstanding the verdict, and the plaintiff appeals that action. The defendant railroad appeals from the judgment entered against it and from the order denying its alternative motions for a new trial.

The factual circumstances giving rise to this lawsuit may be briefly summarized as follows. At around 7:20 p.m., March 17, 1970, Paul Churchill and James Cravens were returning to Dawson, Illinois, from the Sangamon County courthouse, where they had delivered some election materials. Both had served as election judges on that day. Cravens was driving his own 1969 Dodge Charger, and Churchill was riding in the front seat.

Cravens traveled U.S. Route 36 from Springfield and turned left off of Route 36 and proceeded north on Constant Street in the village of Dawson. Constant Street is one of the two streets in the village that crosses the three tracks of the defendant railroad. A passing track is nearest to Route 36; then comes the main-line track, and north of that is a track serving certain elevators located in the village of Dawson. The Constant Street crossing is protected by bells and flashing signals. As Cravens drove onto the tracks, he looked to his right and noticed a train approaching from the east. At about this same moment, the signal light started to work. Defendant Cravens had looked to the east before allowing his automobile to enter the railroad tracks, but his view down the track to the east was blocked by the defendant railroad's cars that were parked east of the Constant Street crossing and on the passing track.

The west end of the westernmost, stored boxcar on the passing track was 414 feet east of the center line of the Constant Street crossing.

With this train approaching from the east, defendant Cravens' car stalled. He tried several times to start the car but was unsuccessful. The car had a standard transmission and Cravens tried to run it off the tracks by using the starter; this, too, was unsuccessful. He then yelled at his passenger, Paul Churchill, warning of the train and telling him to get out of the car. Cravens abandoned the automobile and ran back south of the main tracks. Just after his leaving, the car was struck by the train's engine and exploded into flames. Plaintiff's decedent, Paul Churchill, was killed in this collision and explosion.

As might be anticipated, there is a conflict in the testimony as to how far away the train was when it was first seen by Cravens. A State trooper, David Warnick, investigated the accident. This trooper testified that Cravens told him that he first saw the train when it was about 600 feet east of the Constant Street intersection. However, in an interrogatory propounded by the defendant railroad to Cravens, Cravens stated that the train was approximately at the next easternmost crossing when his car stalled on the track. This interrogatory was not read to the jury. There was testimony in this case that the next easternmost crossing in Dawson was about half a mile east of the Constant Street crossing. The trainmen operating the approaching train testified that they were traveling at approximately 60 miles per hour when they noticed the car was not going to make it across the intersection. The train then was put into an emergency stop situation, but it was not slowed appreciably when it collided with the stalled Cravens' automobile.

We need not detail all of the testimony, but it is fair to summarize by noting that the driver of an automobile that used the crossing prior to the approach of the Cravens' car testified he was traveling south on Constant Street; he crossed the track and stopped at the stop sign that precedes the entry onto Route 36. A car came, turned off of Route 36, turned north onto Constant Street. This was the Cravens automobile. At the time this car pulled off and turned onto Constant Street, the witness, David Squires, stated that he had not heard any flashers or bells or anything to indicate the presence of the train. He did not hear a whistle on the train. Glen Foster, the engineer on the train, testified that the diesel freight train was traveling 60 miles per hour, that the whistle of the train was sounded 900 feet from the crossing, and the engine bell was ringing. The engineer said he first saw Squires' car coming from the north and then the northbound car driven by defendant Cravens. He testified that he was 500 or 600 feet east of the Constant Street crossing when he saw the car of Cravens coming to a stop on the track. A fireman on the train, Charles Bagby,

testified that the train was traveling 60 miles per hour with a whistle being sounded and the bell ringing as the train approached the crossing. The witness also testified that this was a point 500 to 600 feet east of the crossing.

The record is clear in this case that both by judicial decision and action by the village officials of Dawson and the school district that serves that village, the defendant Norfolk and Western Railway, and its predecessor corporation, Wabash Railroad, were repeatedly warned about the consequences of obstructing this particular crossing by parking the boxcars on the passing track on either the east or west side of the Constant Street crossing. (See *Hughes v. Wabash R.R. Co.* (1950), 342 Ill. App. 159, 95 N.E.2d 735; *Rucker v. Wabash R.R. Co.* (7th Cir. 1969), 418 F.2d 146.) There is in the record a letter under date of October 7, 1966, from the attorneys for the Tri-City Community Unit School District No. 1 of Sangamon County, advising the railroad, and particularly its superintendent, of the dangerous nature of the crossing, of the inability of the drivers of the school buses to see up and down the tracks without first bringing their school bus onto the track, and imploring the railroad to take prompt remedial action.

From this brief summary of the facts, we turn now to the consideration of the issues tendered by the plaintiff's appeal. She contends that the Wrongful Death Act is not an exclusive remedy and that it does not limit the statutory cause of action given by the Illinois Public Utilities Act, and that punitive damages are recoverable under that act, independent of the Wrongful Death Act (Ill. Rev. Stat. 1969, ch. 70, par. 1 *et seq.*), the Survival Act (Ill. Rev. Stat. 1969, ch. 3, par. 339), or section 15 of "An Act to revise the law in relation to husband and wife" (the family expense statute) (Ill. Rev. Stat. 1969, ch. 68, par. 15). The plaintiff also contends that the trial court erroneously concluded that a finding of negligence excluded a finding of wilful violation of the statute or wilful and wanton misconduct.

■■ In the case of *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1973), 11 Ill. App. 3d 264, 296 N.E.2d 365, this court held that a claim for punitive damages made under a provision of the Public Utilities Act by an administrator in conjunction with a wrongful death action could not succeed. Language of this court in the *Baird* case was to the effect that the wrongful death statute was in derogation of the common law, was to be strictly construed, and that a plaintiff under that act could only recover compensatory damages. We there stated that even assuming a wilful violation of a safety rule of the Commerce Commission by the defendant railroad, section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) does not engraft itself upon the Wrongful Death Act and

give to the personal representative an additional measure or criteria for damages, nor does it create a cause of action for punitive damages.

Subsequent to our opinion in *Baird*, the Illinois Supreme Court rendered its decision in the case of *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583. That opinion raises serious questions as to the continued validity of the doctrines espoused in our opinion in *Baird*. In *Murphy*, the plaintiff's decedent was severely injured in an explosion in a gas station. Nine days following the explosion, he died from the injuries received in the explosion. His wife, as administrator, instituted an action against the Martin Oil Company, and in count I claimed damages for wrongful death, and in count II asked for damages for the decedent's pain and suffering, loss of wages, and for loss relating to the clothing worn at the time of the injury. The damages asked in count II were based upon a common law cause of action and under the Illinois Survival Act. In *Murphy*, our supreme court expressly overruled the early Illinois case of *Holton v. Daly* (1882), 106 Ill. 131, and expressly held that the plaintiff could recover for the decedent's pain and suffering during the interval between injury and death as well as for the pecuniary loss. The court said:

> "The remedy available under *Holton* will often be grievously incomplete. There may be a substantial loss of earnings, medical expenses, prolonged pain and suffering, as well as property damage sustained, before an injured person may succumb to his injuries. To say that there can be recovery only for his wrongful death is to provide an obviously inadequate justice. Too, the result in such a case is that the wrongdoer will have to answer for only a portion of the damages he caused. Incongruously, if the injury caused is so severe that death results, the wrongdoer's liability for the damages before death will be extinguished. It is obvious that in order to have a full liability and a full recovery there must be an action allowed for damages up to the time of death, as well as thereafter. Considering 'It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations' (*Barden v. Northern Pacific R.R. Co.* (1894), 154 U.S. 288, 322, 38 L. Ed. 992, 1000), we declare *Holton* and the cases which have followed it overruled. What this court observed in *Molitor v. Kaneland Community Unit Dist. No. 302* (1959), 18 Ill. 2d 11, 26, 163 N.E.2d 89, 96, may appropriately be said again:
>
>> 'We have repeatedly held that the doctrine of *stare decisis* is not an inflexible rule requiring this court to blindly follow precedents and adhere to prior decisions, and that when it appears that public policy and social needs require a

> departure from prior decisions, it is our duty as a court of last resort to overrule those decisions and establish a rule consonant with our present day concepts of right and justice. (*Bradley v. Fox,* 7 Ill. 2d 106, 111; *Nudd v. Matsoukas,* 7 Ill. 2d 608, 615; *Amann v. Faidy,* 415 Ill. 422.)' " (*Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431-32, 308 N.E.2d 583, 587.)

It is fair to note at this juncture that the language of this court in *Baird* is clearly in conflict with the language of the supreme court in *Murphy,* at least insofar as this court purported to limit recovery in a wrongful death action to strict pecuniary loss. Accordingly, we hold that *Baird* (11 Ill. App. 3d 264, 296 N.E.2d 365) is no longer applicable and must be overruled.

Next, the supreme court in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509, reviewed a decision of the Appellate Court, Second District, with reference to the issue of punitive damages being recoverable under the Survival Act, and, too, whether there was a common law action for wrongful death which includes the element of punitive damages. The supreme court answered both of the issues presented to it in the negative, noting that many interesting and important questions that arose in the trial and appellate courts had not been brought forward for review under the severely limited issues of the petition for leave to appeal. In our view, the issues tendered by this appeal were in the purview of the interesting and important questions that arose in the trial and appellate courts in *Mattyasovszky* and that were not resolved under the severely limited questions presented by the leave to appeal.

Thus, we have involved in this case the wrongful death, survival and family expense statutes, and section 73 of the Public Utilities Act, and interwoven with all of this the question of whether or not the plaintiff, as administrator or individually, can recover compensatory damages *and* punitive damages, and, if so, under what circumstances and what pleadings. In this connection, we recognize that punitive damages in proper cases have been a part of our judicial system for more than 100 years. *Peoria Bridge Association v. Loomis* (1858), 20 Ill. 236.

■■■ Section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) provides:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or

injury cased thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

In this case, it is the plaintiff's theory that the defendant railroad's boxcars being placed 414 feet east of the Constant Street crossing on the passing track blocked the view of Cravens and Paul Churchill so that they could not see the approaching train on the main line. There was certainly sufficient evidence in this record to present that issue to the jury and the jury's determination of that issue adverse to the railroad is not against the manifest weight of the evidence. Placing obstructions within 500 feet of a crossing is a violation of Rule 205 of the Illinois Commerce Commission (General Order 138). A violation of a Commerce Commission rule by a public utility makes that utility liable for damages for injuries caused by reason of that violation.

■■ It is the defendant railroad's argument in this court that if punitive damages are not recoverable under the Wrongful Death Act or the family expense statute, then plaintiff has no right of recovery therefor. We do not agree. The right of action given in the Public Utilities Act to any person or corporation affected by the violation of that act is by its clear and unambiguous language an independent cause of action—neither derivative nor engrafted upon the Wrongful Death Act or the Survival Act. It is a free-standing, independent cause of action that could properly be asserted by the plaintiff in this case. To hold otherwise would be to ignore the plain language of the statute that says, so far as here applicable, that the railroad shall be liable to the person affected for all loss and that the court may award damages in addition to actual damages for the sake of example and by way of punishment. It would be an absurd result to hold that a statute designed to promote public safety by public utilities can have no application and cannot afford punitive damages when the wilful and wanton misconduct of the utility results in the death of the victim, but that punitive damages can be awarded in the event of only a personal injury. We would not and do not so hold. Punitive damages can be awarded by the court. For purposes of this section "court" encompasses the action of the jury. *Rucker v. Wabash R.R. Co.* (7th Cir. 1969), 418 F.2d 146.

■■ The trial court, relying on the case of *Eggimann v. Wise* (1963), 41 Ill. App. 2d 471, 191 N.E.2d 425, ruled the verdicts finding the defendant guilty of negligence under counts I and VII were in effect verdicts finding the defendant railroad not guilty of wilful and wanton misconduct under counts II and VIII. In substance, the trial court concluded that such

findings were mututally exclusive. We are not so persuaded. We agree with the plaintiff that, considering the pleadings and evidence in this case, it is apparent that the separate and distinct conduct of agents and employees of the defendant railroad was alleged to have been the sole, or at least concurrent, cause of this occurrence. The railroad was responsible for the conduct of these agents and employees. Negligence and wilful and wanton misconduct or wilful and wanton violation of the safety rule need not, under the facts of this case, be mutually exclusive. The jury could believe that particular conduct was wilful and wanton and also believe that such conduct was negligence. We recognize the semantical difficulties that one may find, but we also are aware, as Mr. Justice Schaefer noted in *Mattyasovszky*, that conduct characterized as wilful and wanton often shades imperceptibly into simple negligence. Thus, we hold that while there can be only one recovery for the compensatory damages for wrongful death, the verdict of the jury on count I and count II or VII and VIII is not necessarily mutually exclusive, and the conduct of the defendant railroad could be characterized either as negligence or wilful and wanton misconduct. In any event, the damages awarded under counts I and II purport to be compensatory damages only. Except for the obvious difficulty with reference to the amount of the compensatory damages as set forth in the verdict with reference to counts VII and VIII, the same observation is applicable. Verdicts of a jury are to be construed liberally and reasonably with a view to effectuating the intention of the jury if that is possible. It is clear in this case that the jury sought to award the plaintiff, as administrator, the sum of $45,000 as compensatory damages for the death of the decedent, Paul Churchill. It is equally clear that the jury sought to award the plaintiff, individually, the sum of $1,600 as actual expenses under the family expense statute (Ill. Rev. Stat. 1969, ch. 68, par. 15). The insertion of the figure $45,000 in the verdict form with reference to count VIII was an obvious error. It is also clear that the jury by its verdict intended to award the plaintiff, individually, damages in the sum of $600,000 as punitive damages.

■■ It was the duty of the court to enter judgment in accordance with the manifest intent of the jury and to make the award to the plaintiff as administrator and plaintiff individually as shown by the intention of the jury. *Handelman v. Schwartz* (1958), 17 Ill. App. 2d 101, 149 N.E.2d 418.

We turn now to the defendant railroad's cross-appeal and examine whether the decedent was in the exercise of due care for his own safety and whether the speed of the train and the obstructions placed at the crossing were a proximate cause of the accident. The record shows that the decedent was a man of 62 years of age, that he was hard of hearing, in good health and was familiar with the crossing. At the time of the incident, there were cars of the defendant railroad company so parked

that, as the automobile approached the main track of the railroad, the vision of the driver to his right, or to the east, was obstructed. The record further shows that the defendant train was traveling 60 miles per hour and this under orders from the railroad dispatcher. The evidence likewise shows that a car preceding the Cravens car had crossed over this crossing and the lights of the engine struck its side. The evidence is in conflict or in confusion as to just how far the engine was east of the accident when Cravens first saw it, or could have seen it.

 The brakeman on the train indicated that the car could be seen for about half a mile and it was not until the train was within the 500 to 600 feet that the train crew became aware that the automobile was not going to make it across the crossing. A matter of about seven seconds, or thereabouts, elapsed. Cravens' depositions indicate that his car stalled on the main track, that he was aware of the train in the distance for half a mile, that he made two or three attempts to start the car, then threw it into gear and endeavored to move it across the track with the battery. Finally, he threw open the door, jumped out and cleared himself from the accident. In the meantime, he stated that he had two or three times told the decedent to jump, and testified that at one point the decedent had his hands on the handle of the door. When the train struck, the car was demolished and burst into flames. Churchill's body was in the car with the seat belt still in place. Whether Churchill ever heard the warning of the driver, whether he ever saw the train, or whether he made an attempt to extricate himself from the automobile is all a jury question. The car was a stranger to him so far as this record shows. We do not know whether the operation of the seat belt was strange to him. His driver had time to get out safely. Why didn't the decedent? Did he try to open the door? Was he unable to open his seat belt? When confronted with the sudden emergency, was he for one reason or another unable to cope? Under the facts of this case, it would seem clear that the resolution of these questions was for the jury. Whether the decedent was in fact guilty of contributory negligence becomes rather insignificant in light of our view that the evidence sustained a verdict of wilful and wanton misconduct on the part of the railroad. It is nonetheless a jury question to determine the existence or nonexistence of contributory negligence and contributory wilful and wanton conduct on the part of the decedent. It was also clearly a question for the jury to determine whether the placement of the cars, the speed of the train, and the circumstances attendant at the crossing were or were not a proximate cause of this death.

The defendant railroad contends that the trial court committed error in denying it the right to call defendant Cravens as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 60). The plaintiff sought to read into the record certain interrogatories

propounded to defendant Cravens by the plaintiff concerning Cravens' knowledge of the approaching train when he pulled up to the intersection and what he was able to see when looking east. The defendant railroad objected and moved to strike the answers to these interrogatories on the ground that they were not binding upon the railroad and were hearsay. Counsel for the plaintiff agreed and stated that they were introduced as evidence against defendant Cravens. The court concluded that they were only admissible against Cravens and were not admissions against the railroad.

After the plaintiff rested, the defendant railroad then called Cravens under section 60 as an adverse witness and plaintiff objected. The trial court ruled that none of Cravens' testimony was admissible on counts I, II and V, as against the claim of the administrator of the estate under the Wrongful Death Act, and an offer of proof was made by the railroad. After this matter was discussed in chambers, the jury was brought in and the railroad's counsel proceeded, saying he wanted to read to the jury Cravens' answers to certain interrogatories. Plaintiff objected on the grounds that she did not believe that the interest of Cravens and the railroad were adverse. Counsel for the defendant railroad stated he believed the interest of Cravens and the railroad were adverse and that the answers were competent, were qualified under the Evidence Act (Ill. Rev. Stat. 1969, ch. 51, par. 2) and in addition were admissible against Cravens as an admission against interest. The objections were sustained. This ruling is now assigned as error, and we are urged to hold that the defendant railroad was entitled to call Cravens under section 60 of the Civil Practice Act and that their interests were in fact adverse.

■■ In addressing this issue, in the memorandum opinion to which we have referred, the trial judge recited that which happened and then observed that, after the objections were sustained by the court, both sides rested their case, and during a conference with the court on jury instructions, plaintiff offered to permit the defendant railroad to reopen its case and agreed not to object should it desire to call its co-defendant under section 60 of the Civil Practice Act. Counsel for the railroad declined to do so, contending that prejudice had already been created in favor of the plaintiff and against the railroad and that this prejudice would not be overcome by reopening the case and presenting that testimony. The trial court noted that the plaintiff's offer to withdraw the objection came prior to closing argument by the attorneys and then stated that the court, having heard all the evidence adduced in the case to that point, was of the opinion that the defendant railroad was not so prejudiced by the ruling and that the assignment of error became moot by reason of the plaintiff agreeing to withdraw the objection. We agree.

Furthermore, upon the issue of the distance between the crossing and

the train at the time that Cravens' automobile approached the track, there is evidence from the testimony of the defendant railroad's agents and employees that the train was some 500 to 600 feet from the crossing.

Previous accidents at the same crossing under somewhat similar, yet not exactly the same, conditions were admitted by the trial court, and the defendant claims that such admission was error. In summary, witnesses testified concerning many occasions in which railroad cars were kept near the Constant Street crossing on the passing track so that it was difficult to see approaching trains on the main line without pulling right up to that track. Many of the witnesses were school-bus drivers or school administrators who related their complaints to the railroad about these obstructions. In just about all cases, the railroad had moved the cars complained about but moved the same cars or others back into similar obstructing positions. The stored cars on the passing track about which they were testifying were within the 500-foot prohibited limit. The plaintiff asserts that such testimony of prior accidents was admitted upon the question of knowledge of the defendant railroad or notice to it of the extra-hazardous conditions. The railroad readily admitted that the cars in question at this time were less than 500 feet from the scene of the accident, and that such placement of the cars constituted a violation of Rule 205 of the Illinois Commerce Commission prohibiting obstructions within 500 feet. There was in this case, of course, an issue of wilful and wanton conduct and an issue of knowledge and reckless disregard for the safety of others.

■■ In Ray v. Cock Robin, Inc. (1973), 10 Ill. App. 3d 276, 282, 293 N.E.2d 483, 487, the court stated the rule in this State to be:

> "The law is well settled that evidence of prior accidents, occurring at the same place or with the same instrumentality, is competent, not for the purpose of showing independent acts of negligence, but for the limited purposes of showing that the common cause of such accidents was the unsafe condition or thing, and that the frequency of such accidents tends to show knowledge of such condition. (E.g., Moore v. Bloomington, Decatur and Champaign R.R. Co., 295 Ill. 63, 67; Smith v. City of Rock Island, 22 Ill. App. 2d 389, 399; Lineen v. City of Chicago, 310 Ill. App. 274, 283; Shepard v. City of Aurora, 5 Ill. App. 2d 12, 26.)"

The evidence of other accidents received here did not establish that the defendant railroad was in fact negligent or guilty of a wilful violation of the statute or was guilty of wilful and wanton misconduct in this particular instance. Rather, the evidence established that the defendant had notice of the dangerous condition and the fact of a continued and wilful violation of Illinois Commerce Commission Rule 205. Such evidence was admissible for the purpose for which it was offered.

Finally, the defendant railroad complains that the trial court committed error in not giving certain instructions tendered by it and referred to in the *Rucker* opinion as a footnote (*Rucker v. Wabash R.R. Co.* (7th Cir. 1969), 418 F.2d 146, 153-54 n.6). Those instructions, being the defendant railroad's instruction Nos. 22, 25, 26, 28, 29, 30, 31, 32 and 33, were in many respects duplicates of other instructions in fact given by the court. We do not deem it necessary to go through those instructions one by one and prolong this opinion by a discussion of the various features of the instructions. We have examined the instructions and conclude that this jury was thoroughly and adequately instructed upon all points in contention and that there was no reversible error in refusing to give the non-IPI instructions taken from the *Rucker* case.

The judgment of the circuit court of Sangamon County is affirmed in part and reversed in part, and this cause is remanded to the circuit court with directions to enter a judgment for the plaintiff, as administrator, for compensatory damages in the amount of $45,000; to enter a judgment for the plaintiff, individually, for compensatory damages in the sum of $1,600; and to enter a judgment for the plaintiff, individually, for punitive damages in the sum of $600,000.

This court unanimously, upon its own motion, certifies that this case involves a question of such importance that the case should be decided by the supreme court. Accordingly, pursuant to the authority to certify found in section 4 of article VI of the 1970 Illinois Constitution and Supreme Court Rule 316 (Ill. Rev. Stat. 1975, ch. 110A, par. 316), it is ordered that a certificate of importance issue to the supreme court.

Affirmed in part, reversed in part and remanded with directions.

REARDON, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:
I agree with the decision of the majority to remand with directions to enter a judgment in favor of plaintiff, as administrator, for compensatory damages in the amount of $45,000 and to enter a judgment in favor of plaintiff individually in the sum of $1,600 compensatory damages. I disagree with the decision to order the entry of a judgment in favor of plaintiff individually for punitive damages in the sum of $600,000.

I find nothing in the opinion in *Murphy v. Martin Oil Co.* (1974), 256 Ill. 2d 423, 308 N.E.2d 583, which I consider to raise serious questions as to the continued validity of the doctrines espoused by this court in *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1973), 11 Ill. App. 3d 264, 296 N.E.2d 365. In *Holton v. Daly* (1882), 106 Ill. 131, the court had ruled that, despite the apparently clear wording of the Survival Act, actions against a

tortfeasor for damages incurred by a deceased as a result of an injury caused by a tortfeasor did not survive and pass to the deceased's personal representative if the deceased later died from those injuries. The rationale of the decision was that a suit for the injuries and a suit for the wrongful death would seek recovery for the same wrongful act and that the Wrongful Death Act was intended to be the sole means of recovery permitted to arise from the wrongful act causing the death. The Wrongful Death Act permitted only recovery for the pecuniary loss to the next of kin as a result of the death and permitted no recovery for damages incurred by the decedent in his lifetime. Recognizing the unfairness of a rule which prevented recovery for pecuniary loss, the supreme court ruled in *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 168, that a surviving spouse made liable by statute (Ill. Rev. Stat. 1955, ch. 68, par. 15) for the medical expenses and funeral bills for a tortiously killed spouse had a common law action against the tortfeasor to recover for the financial liability imposed upon her. *Murphy* went one step further than *Saunders v. Schultz* by ruling directly that a decedent's cause of action for medical expense, loss of wages and pain and suffering survived his death and passed under the Survival Act to his personal representative even though the decedent died from the very injuries that gave rise to the cause of action.

*Baird,* on the other hand, ruled that punitive damages could not be recovered in an action brought under the Wrongful Death Act by a complaint alleging that the death arose as a result of a defendant's wilful violation of section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77). Although the opinion in *Murphy* stated that justice required full liability as well as full compensation, that same court in *Mattyasovszky* made clear that it was speaking only with reference to compensatory damages in *Murphy* and did not intend to indicate that abatement of an action for punitive damages would be prevented by the Survival Act. Much of the opinion in *Mattyasovszky* was devoted to whether the court should establish a common law action for wrongful death which included a right to recover punitive damages. The opinion questioned the general desirability for actions for punitive damages and determined that no such action should be judicially created. I thus consider *Baird* to be unimparied by subsequent precedent.

The majority correctly points out that recovery of punitive damages by plaintiff under count VIII is not dependent upon punitive damages being either recoverable under the Wrongful Death Act or being given continued life by the Survival Act. Indeed, the Survival Act is not in issue here because the decedent apparently died instantly and thus was not possessed during his lifetime of a cause of action arising out of the occurrence. Plaintiff's ingeneous theory for recovering under count VIII is

analogous to the common law cause of action created by the opinion in *Saunders v. Schultz*. She contends that the defendant railroad's wilful violation of Rule 205 caused the death of her husband and thus caused her to become liable in the sum of $1,600 for the funeral bill of decedent. She further contends that she thereby became a person "affected" by the wilful violation within the meaning of section 73 of the Public Utilities Act and entitled to sue for compensatory damages in the sum of $1,600 and for punitive damages. The question of whether plaintiff's recovery under count VIII should have been permitted to stand is largely a question of statutory construction and a close question. The word "affected" is ordinarily given a broad meaning. Nevertheless, I do not think that the legislature intended to provide in section 73 for a cause of action for one in plaintiff's situation.

Section 73 is still in its original form as enacted in 1921, long before the decision in *Saunders v. Schultz*. In determining the meaning which the legislature intended to give the word "affected," the following statement of the supreme court in *Hall v. Gillins* (1958), 13 Ill. 2d 26, 30, 147 N.E.2d 352, 355, is informative:

> "It is possible, of course, to contemplate a system of law that would, in the case of a death caused by the wrongful conduct of another, impose liability upon the wrongdoer in favor of all persons whose rights were affected in any degree. But the common law has characteristically imposed close limits upon the parties entitled to sue."

Similarly, not only in the Wrongful Death Act but also in the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 69), the Coal Mining Act (Ill. Rev. Stat. 1975, ch. 93, par. 10.07) and the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135), the legislature, in creating actions arising because of the death of another, has imposed close limits upon the parties entitled to sue and usually as to the measure of recovery. In view of this history, I do not believe that the legislature intended in 1921 to create a cause of action under section 73 which would (1) give a separate right to a personal representative or next of kin to sue for a death caused by a violation of the Act or (2) give a right to sue to an individual made liable to pay funeral expenses resulting from a death caused by a violation of the Act. I conclude that the term "affected" was used because section 73 provided not only for actions concerning safety violations but also for actions concerning quality of service furnished, use of facilities and other matters that do not involve rate reparations.

From the decisions in *Saunders v. Schultz, Murphy*, and the cases cited in those opinions, a body of law has developed which permits fuller recovery of compensatory damages incurred because of a tortiously caused death. To now rule that a person in plaintiff's situation was a

person "affected" by the section 73 violation would do nothing to further that trend because plaintiff can already recover full compensation for the funeral bill by the type of common law action authorized by *Saunders v. Schultz*. She did so here. The evidence in the instant case of gross misconduct upon the part of the defendant railroad's employees in continuing to improperly place cars near the crossing despite repeated warnings makes this case an attractive vehicle to similarly expand the opportunities for the recovery of punitive damages. I do not interpret *Mattyasovszky* as indicating that public policy favors such an expansion, however.

Since compensatory damages can be obtained against a railroad in a crossing case in an ordinary negligence action, section 73 is of significance largely because of the provision for punitive damages for a wilful violation. I think that it is very clear that in enacting the section, the legislature did not intend to create an action for wrongful death in the personal representative or next of kin of a deceased as "affected" persons. That the legislature did not intend to create the type of action brought here is less clear and presents a closer question. To permit punitive damages to be recovered in the latter type of case and not in the former would present a confusing situation. The instant jury was apparently subject to this confusion because it awarded compensatory damages upon count VIII not merely for the sum of the $1,600 funeral bill but in the amount of $45,000, the same sum as was awarded for the wrongful death. It thus appears that the jury was awarding punitive damages not merely for injuring plaintiff by subjecting her to liability for the funeral bill but for all her injuries resulting from her husband's death. Avoidance of such confusion is a further reason not to now construe section 73 as permitting the action brought by count VIII.

Accordingly, I concur in the disposition made by the majority in all respects except that I would affirm the action of the trial court in setting aside the award of punitive damages. To that extent I dissent.