THE NATIONAL BANK OF BLOOMINGTON, Adm'r of the Estate of Ray Weldon Groves, Deceased, *et al.*, Plaintiffs-Appellees and Appellants, *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*, Defendants-Appellants and Appellees.

Fourth District   Nos. 12253, 12287 cons.

Opinion filed March 24, 1977.

Green, J., concurring in part and dissenting in part.

Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington (Robert W. Neirynck, of counsel), for appellants and appellees Norfolk & Western Railway Company *et al.*

Jerome Mirza and Associates, Ltd., of Bloomington, for appellees and appellants The National Bank of Bloomington *et al.*

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The issues presented by this appeal have their origin in a train-car collision in Bloomington, Illinois, resulting in the automobile driver's death. After a jury trial, the circuit court of McLean County entered judgment on jury verdicts which (1) awarded the administrator bank $20,000 compensatory damages for wrongful death, and (2) awarded Marie Groves, the plaintiff widow, individually, $4,348.60 for medical, funeral and like expenses paid by her. Finally, the circuit court entered a judgment notwithstanding the verdict in favor of the defendant railroads on the jury's verdict of $300,000 to the administrator for punitive damages against the defendants under certain provisions of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111 2/3, par. 77). The defendants appeal from

the two compensatory judgments entered against them and the plaintiffs appeal the judgment notwithstanding the verdict vacating the award for punitive damages. These appeals were consolidated for purposes of briefs, argument and opinion.

The facts in this case are that a street in Bloomington, Illinois, Lincoln Street, which runs east and west, intersects with two railroad tracks that run north and south. The west set of tracks belong to the defendants Penn Central and Peoria and Eastern railroads. The east set of tracks is leased by the Norfolk and Western from the Wabash Railroad Company. The only warning device at the intersection is a wooden crossbuck sign stating "Railroad Crossing." In the northeast quadrant of the crossing there is a house, the address of which is 1211 South Clayton Street. This house is east of the Norfolk and Western tracks. An exhibit in evidence indicates that the house encroaches 3 feet 10 inches upon the right-of-way and there is a space of 12 feet 6 inches from the house to a fence, and then from the fence to the actual tracks of the Norfolk and Western is a distance of 13 feet 7 inches. The decedent, Ray Weldon Groves, was struck by a freight train operated by the defendant Norfolk and Western at this intersection. The decedent was traveling in a westerly direction at about 2 p.m. A brief summary of the evidence with reference to the incidents involved is as follows. James Bryant, who lives eight or nine lots west of the crossing on Lincoln, testified that Lincoln Street was substantially improved in 1967 and as a result of that improvement, the vehicular traffic in the area more than tripled. After the 1967 improvements and the widening and paving of the road, the traffic showed that 8,315 vehicles went over the crossing in a 96-hour period of time. After the increased traffic flow, accidents occurred at the crossing.

A locomotive fireman for the defendant Norfolk and Western Railway testified that he was part of the crew of the train that was involved in the collision with the decedent. At the time, he was in the fireman's seat on the left-hand side of the locomotive. He stated that he was looking to the south and to the east but he did not see the automobile that collided with the train before the impact. He also stated it was a cold, overcast, winter day and that the house with trees and shrubbery near the tracks obstructed his view in the south and east directions. He indicated that the train was traveling at a rate of about 25 miles per hour as it approached the crossing, and by reason of the suddenness of the incident, the brakes were not applied prior to the collision. He indicated the whistle had been blowing for approximately 1,500 feet, the light was on and the bell was ringing. A city policeman who investigated the accident indicated that the street was slippery. He saw nothing to indicate any skid marks and testified that the posted speed limit on Lincoln Street was 30 miles per hour.

The evidence indicates that the Peoria and Eastern right-of-way was 65.55 feet wide and the Norfolk and Western right-of-way was 54.45 feet wide.

Witnesses testified with reference to the prior collisions at the same crossing after the street was paved and widened. Floyd Schroader, the sheriff of McLean County, testified that he investigated an automobile-train collision at this crossing on March 21, 1968. He stated that the car involved in the accident was traveling west on Lincoln and collided with a Norfolk and Western train going south. A witness, George Hormell, testified that in February 1969 his car collided with a train at the Lincoln Street crossing. He was traveling west on Lincoln and the train was coming from the north on the Penn Central track. Danny Shepherd testified that in December 1967 he was involved in a vehicle-train collision at the Lincoln Street crossing. He was traveling west on Lincoln and the train owned by the Norfolk and Western was going south. Winston Lee Glass testified as to the same incident investigated by the sheriff.

Testimony was received from witnesses that the decedent was a good and careful driver and had always observed the speed limit. Marie Groves, the wife of the decedent and one of the plaintiffs, testified that she and the decedent had been married for 51 years, that he was 73 years of age, was retired and was in very good health. She also testified as to his careful driving habits. The decedent's son, Jack Groves, testified that he had talked to his father at the hospital before his death and his father indicated he did not know what happened and stated he did not hear anything.

The owner of the house testified as to his ownership and stated that the Norfolk and Western had never made any claim or said anything to him with reference to the fence on his property or anything with reference to land east of that fence. He maintained the backyard, the bushes and the fence and always had possession of the fence and land east of it. Photographic evidence was received and testimony was received with reference to the visibility at the crossing. An engineer employed by Norfolk and Western testified that he took sight-line measurements of the crossing from the center of Lincoln Street to determine how far one can see down the tracks to the north from a given distance. By standing on the center line of Lincoln Street at 100 feet east of the crossing, he could see a distance of 60 feet north down the tracks; by standing in the center line of Lincoln Street 40 feet east of the crossing, he could see a distance of 85 feet down the tracks; at 20 feet from the crossing he could see 450 feet north down the tracks; and at 30 feet east of the crossing, he could see a distance of 110 feet north down the tracks. An employee of the railroad who was riding on the east side of the second engine of the train testified that the automobile driven by the decedent was traveling at

approximately 25 to 35 miles per hour. He first saw the car when it was 200 to 300 feet east of the crossing. At this point, the car disappeared from his view because of the house and he did not see the car again until it came out from behind the house and onto the crossing. The train was then 150 to 200 feet north of the crossing when the car came out from the back of the house traveling at the indicated speed. He indicated that the train whistle had been blowing approximately 500 to 600 feet prior to the impact and that the train was traveling between 25 to 35 miles per hour.

In addition to the verdicts returned by the jury as indicated above, the jury also returned a verdict absolving the Penn Central and Peoria and Eastern railroads of all liability. By way of special interrogatory the jury specifically found the decedent was not guilty of contributory negligence or contributory wilful and wanton conduct, and further found that the defendants Norfolk and Western and the Wabash railroads were guilty of negligence proximately causing the decedent's death and guilty of a wilful violation of Rule 205 of the Illinois Commerce Commission.

■■■ The sole issue presented by the defendant railroads related to their contention that the decedent, Ray Weldon Groves, was guilty of contributory negligence as a matter of law. In our examination of this issue we first address ourselves to the type of obstruction with which we are dealing. The defendants characterized the obstruction as "partial" while the plaintiffs used the term "severe" with some references by both parties to varying degrees in between. The semantics are not important, rather it is sufficient to simply say that we are dealing here with an obstructed crossing. The view of the tracks from a car heading west on Lincoln is limited by the house on the corner of Clayton and Lincoln and is limited by the shrubbery and trees growing in the backyard and by the fence in the area, all on or partly on the right-of-way of the defendants. Defendants' own testimony establishes that traveling 100 feet east of the tracks one can see only 60 feet north down the tracks. The photographs of the scene, other testimony dealing with the obstruction, evidence of prior accidents, and evidence that the fence, trees, and shrubs are on the defendants' right-of-way was more than sufficient evidence for the jury to find negligence on the part of the defendant railroads in maintaining an unreasonably dangerous crossing, and indeed the evidence was sufficient to find a wilful and wanton violation of the rule of the Commerce Commission and the appropriate section of the Public Utilities Act.

■■ While it might be that a finding of wilful and wanton violation relegates the issue of the decedent's contributory negligence to the insignificant, it is sufficient to say that we are dealing with a railroad crossing that is obstructed, that is extra hazardous and that is not protected by any warning device other than the traditional crossbuck sign. It is well established that railroad crossings are dangerous and that

travelers are required to diligently use the senses of sight and hearing and exercise a degree of care commensurate with the danger. The oft-cited case of *Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, 147 N.E.2d 376, stands for the proposition that at an unobstructed crossing the plaintiff will not be permitted to say he looked and did not see when there was nothing to block his sight. This is not such a case. We believe the rule to be that where there is an obstruction at the crossing and facts and circumstances similar to those shown in this record, the question of due care on the part of the plaintiff is a question of fact for the jury and not a matter of law for the court. (*Gray v. Terminal R.R. Assoc.* (1962), 37 Ill. App. 2d 376, 185 N.E.2d 700.) In any event, we cannot say from this record that when all the evidence is viewed in its aspect most favorable to the plaintiff, it so overwhelmingly favors the defendants that no verdict against the defendants based on that evidence could ever stand. Thus, under the familiar *Pedrick* test this case was appropriately submitted to and resolved by the jury. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ By their appeal, the plaintiffs contend (1) that the defendants waived the right to claim that the administrator lacks standing with reference to the cause of action for punitive damages; (2) that the plaintiffs' motion to amend the complaint to conform to the proof after judgment by adding another count substituting the widow individually for the administrator as the complainant for punitive damages should have been allowed, (3) that the provisions of the Wrongful Death Act (Ill. Rev. Stat. 1969, ch. 70, par. 1 *et seq.*) do not limit the specific cause of action granted by the Public Utilities Act, and (4) that there is a common law right to seek punitive damages in a wrongful death action. Thus, their appeal squarely presents the question of whether or not punitive damages under the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111 2/3, par. 77), Rule 205 of the Illinois Commerce Commission, which requires railroads at a highway crossing to keep the right-of-way clear of brush, shrubbery, trees, etc., may be awarded either through the administrator's action under the wrongful death statute or to the widow as an element of her damages or not at all.

In an opinion filed concurrently with this opinion, *Churchill v. Norfolk and Western Ry. Co.* (1977), 46 Ill. App. 3d 781, 362 N.E.2d 356, we examined the issues tendered by the plaintiff's appeal in some detail and concluded that the opinion of this court in *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1973), 11 Ill. App. 3d 264, 296 N.E.2d 365, should be reexamined in the light of more recent supreme court opinions relative to the issue tendered by that case. Upon reexamination, we concluded that *Baird* should be overruled. We need not repeat here what we have said there.

The conclusion we reach in *Churchill* is to the effect that the widow, as plaintiff, seeking to recover under the family expense statute (Ill. Rev. Stat. 1969, ch. 68, par. 15) was entitled under the Public Utilities Act to recover punitive damages as a person affected by the wilful and wanton tortious conduct of the defendant railroads in violating the safety rule promulgated by the Illinois Commerce Commission. It makes no sense whatsoever to permit a recovery by the widow individually when she has paid funeral expenses and deny recovery to the administrator of the estate when those expenses have been paid by the administrator, and by this proceeding the administrator seeks to recover the expenditures that decreased the decedent's estate. In *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163, the court in discussing the right of a surviving spouse or an administrator to recover such expenses, stated:

> "Inasmuch as it is the genius of our common law that it can be, and is, responsive to the changing obligations and relationships within our legal system, we believe that the common law should be construed to permit the recovery of such funeral and medical expenses in an action either by the decedent's estate, or, as in the instant case where no such claim was made, by the surviving spouse. This interpretation is supported not only by cogent reasoning, but by the dominant judicial opinion in other jurisdictions, and earlier decisions of our courts.
>     * * *
>     * * * The estate or the spouse, either or both as the circumstances indicate, are entitled to recover for pecuniary losses suffered by either or both which are not recoverable under the Wrongful Death Act, and all cases holding the contrary are overruled." (20 Ill. 2d 301, 310-11, 170 N.E.2d 163, 168-69.)

The Public Utilities Act affords a remedy to any person or corporation for injury or damage and expressly allows punitive damages. Accordingly, we hold that the administrator, like the widow individually, is a person affected by the violation of the Commerce Commission rule and in turn the provisions of the Public Utilities Act, and either has standing to sue. Thus, we need not pass upon the motion to amend.

The action of the trial court in this case in entering judgment notwithstanding the verdict as to the punitive damages was obviously the same as the ruling of this court in *Baird*.

The judgment of the circuit court of McLean County upon that issue must be, and the same is, reversed. Accordingly, it will be the order of this court that the judgment of the circuit court of McLean County be affirmed in part, reversed in part, and remanded with directions to enter judgment upon the verdicts of the jury.

This court unanimously, upon its own motion, certifies that this case

involves a question of such importance that the case should be decided by the supreme court. Accordingly, pursuant to the authority to certify found in section 4 of article VI of the 1970 Illinois Constitution and Supreme Court Rule 316 (Ill. Rev. Stat. 1975, ch. 110A, par. 316), it is ordered that a certificate of importance issue to the supreme court.

Affirmed in part, reversed in part, and remanded with directions.

REARDON, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

I concur in the affirmance of the judgments awarding compensatory damages to the plaintiff administrator and the individual plaintiff. I dissent from the reversal of the judgment entered for the defendant notwithstanding the verdict awarding the plaintiff administrator punitive damages. My dissent is for the reasons stated in my partial concurrence and partial dissent in *Churchill v. Norfolk & Western Ry. Co.*, 46 Ill. App. 3d 781, ___ N.E.2d ___.