ALAN H. WILLIAMS *et al.*

*v.*

LUCIAN M. WILLIAMS *et al.*

*Opinion filed October 26, 1903.*

1. INFANTS—*infant party to chancery suit is a ward of the court.* In suits in chancery respecting the person or property of an infant, the latter is treated as the ward of the court and under its special cognizance and protection.

2. SAME—*right of court of equity to compromise infant's suit.* Upon a bill filed by an infant to contest a will, the court has power to approve a compromise agreement between the parties sustaining the will and making provision for the complainant, where such agreement is fair, equitable and for the infant's best interest.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This is a bill, filed on July 1, 1902, by Annie D. Williams, the widow of John M. Williams, deceased, and Alan H. Williams, an infant son of said John M. Williams, deceased, suing by his next friend, to set aside the will of the said John M. Williams, deceased, upon the alleged ground that the testator was not of sound mind and memory at the time of making his will, but was of such great age and infirmity, and his mind and memory were so impaired, as to render him wholly incapable of making a just and proper distribution of his estate. The bill prays that the will and the codicils thereto may be set aside, and declared to be null and void, and that the estate may be distributed among the heirs according to law.

The answer of the adult defendants was filed on September 29, 1902, admitting all the material allegations of the bill, except the charge that the testator was not of sound mind and memory, etc., which latter charge was denied by the answer. Two of the defendants below are minors, and answered by their guardian *ad litem.* Replication was filed to the answer of the adult defendants.

While the cause was pending upon the issue made by the bill and answers thereto as to whether the testator was of sound mind and memory or not when he made his will, a petition of Alan H. Williams by P. Shelley O'Ryan, his next friend, was filed on December 19, 1902, setting up that a conference had been held between the next friend of the infant petitioner and the defendants, and that a settlement and compromise of the matter at issue had been made between them. The petition states the nature and terms of the compromise, and prays that the defendants may answer the petition, and that the question, whether the settlement proposed is for the best interests of the infant petitioner, should be referred to a master in chancery to take evidence, and report his conclusions of law and fact to the court. Answer was filed on behalf of the minor defendants by their guardian *ad litem,* and an answer was filed on behalf of the adult defendants, admitting that they had made the offer of compromise, set forth in the petition, in the interest of peace and family harmony, and in the belief that an acceptance of said offer would be beneficial to petitioner, and stating their readiness and willingness to carry out the compromise, if the same should be finally approved and confirmed by the court as being for the best interest of the petitioner. The defendants joined in the prayer for a reference. The minor defendants, John M. Williams and Margaret Williams, filed a petition, setting up the same facts as are contained in the petition of Alan H. Williams, and stated that their interest in the proposed settlement is identical with that of their adult co-defend-

ants, and praying that, as they are minors, the question, whether the proposed settlement is to their interest, be passed upon by the court.

The material facts, as gleaned from the pleadings and the master's report and the evidence accompanying the same, and the decree of the court below, are substantially as follows:

John M. Williams died testate on March 9, 1901, in the seventy-ninth year of his age in California, leaving him surviving Lucian M. Williams, his son; Isabella W. Blaney, his daughter; Helen Williams Husser, his daughter; John M. Williams and Margaret Williams, the only heirs-at-law of Walter Williams, a deceased son; Jessie Williams Simmons, his daughter; Edith Williams Kirkwood, his daughter; Nathan W. Williams, his son, all named as defendants to the bill herein, and the complainant Alan H. Williams, his son, and the complainant, Annie D. Williams, his widow. The persons above named were his only heirs-at-law and next of kin. His will was executed and dated on August 10, 1896. On November 19, 1896, he executed a codicil thereto, and on April 5, 1897, he executed a second codicil thereto, and on the 11th day of July, 1898, he executed a third codicil thereto. His will was admitted to probate in the probate court of Cook county on April 16, 1901, and letters testamentary thereon were issued to the said Lucian M. Williams, Nathan W. Williams and Parke E. Simmons, as executors thereunder.

The deceased was twice married. The defendants in the bill, and appellees in this court, are his children by the first marriage, and his two grandchildren, John M. Williams and Margaret Williams, who are also infants, are the children of a deceased son, Walter, by the first marriage. On April 1, 1897, the testator made up his mind to marry a second time, and entered into an antenuptial contract with Annie E. Dearborn, now Annie D. Williams, and one of the appellants herein. Accordingly,

on April 5, 1897, after his marriage to Annie E. Dearborn, he made a second codicil to his will, making the recitations therein as hereinafter set forth. By the terms of the original will, executed on August 10, 1896, before his second marriage, he divided his property equally between his children and grandchildren above named. By the terms of the second codicil of April 5, 1897, he made provision for such child, as should be born of his second marriage, to the amount of $50,000.00. Ten thousand dollars of this was to be used in the education and maintenance of such child, (who turned out to be the present appellant, Alan H. Williams), and of the remaining $40,000.00, $10,000.00 was to be paid to such child upon his reaching the age of twenty-one years, and $30,000.00 thereof was to be set aside and invested, and the net income thereof paid over to such child; but it was further provided that $10,000.00 should be paid to the child when it should attain the age of twenty-four years, another $10,000.00 when it should attain the age of twenty-seven years, and another $10,000.00 when it should attain the age of thirty years. It is unnecessary to set forth the provision made for the widow, Annie D. Williams, as, being an adult, she was competent to make a contract with the donors. The settlement and compromise, offered to the infant child, Alan H. Williams, or his guardian and next friend, proposed to pay him, or to trustees for his benefit, an additional sum of $50,000.00, making the total amount to be realized by him out of his father's estate, the sum of $100,000.00. The sum of $50,000.00, by the terms of the settlement, was to be held by a trust company to be named by the court, for the use and benefit of petitioner, and to be invested in a certain specified manner by said trust company with the approval of the mother of the petitioner, Annie D. Williams, the income to be collected by said trust company until the petitioner should attain the age of twenty-one years, unless he and his mother should sooner die; the net income so collected

to be paid to Annie D. Williams to be expended for petitioner's use, and, in the event of her death, to his legally appointed guardian, monthly or quarterly; with a provision that, if the petitioner should die before reaching the age of twenty-one years, and his mother be not living, then the trust to terminate, and the trust fund to go to the donors; and, if, before attaining the age of twenty-one years, petitioner should die and his mother should survive him, the income to be paid to her during her lifetime, and upon her death the trust to cease and the property to go to the donors, the children and grandchildren of the testator; but, in the event petitioner attained the age of twenty-one years, the trust should cease and determine, and all the trust property should belong to and vest in him and be transferred to him by the trust company. There were other provisions embraced in the terms of the settlement, but it is unnecessary to state the same more fully.

The cause was referred to a master in chancery, who took testimony, and made a report. The master's report, which was filed on February 18, 1903, stated that seven witnesses, who had known John M. Williams, and had come into intimate contact with him, had been examined; that they all testified unanimously that they knew him at and about the time of his death, and that he was not only of sound mind and memory, and in such a condition as to be wholly capable of making a just and proper distribution of his estate, but that he was a man of unusual and keen observation, of very sound judgment, a man, who followed his large business interests carefully, determining at times upon costly investments. Besides the testimony of witnesses, a large number of letters were introduced in evidence before the master, written by the testator during the last years of his life to his son and son-in-law in reference to his business matters. In his report, the master found that the compromise and settlement, offered by the defendants below

and recommended by the next friend and the widow herself, was eminently reasonable and fair to all the interested parties, and should be effectually carried out under the guidance and directions of the court, and the master recommended that a decree be entered in accordance with the findings.

Accordingly, on February 26, 1903, the circuit court rendered a decree, confirming the report of the master, and therein finding that the proposed settlement was a just and advantageous settlement for the minor complainant, and for the minor defendants, and that it was for their best interest that the litigation should be compromised by the making of said settlement. The decree further finds that the evidence tended strongly to prove, that, at the time the will and the codicils thereto were made, John M. Williams was of sound mind and memory, and well capable of making a just and proper distribution of his estate, and that the will and codicils were in law and in fact his will and codicils; and it was decreed by the court that a contract in writing, embodying the terms of the settlement, should be prepared by one of the masters in chancery of the court, and, when signed by the adult defendants and the trust company therein named, and upon the payment to said trust company of the money provided for by the settlement, should be executed by the master on behalf of the minors; and the court, by the decree, appointed the Union Trust Company of San Francisco, California, as the trust company to be named in and to execute the trust; and it was further ordered that the contract, when executed and delivered, should be effectual to create a lien upon the real estate therein described, as security for the payment of the annuity thereby created, and that the executors and trustees under the will of the testator, were authorized and directed to convey to complainant, Annie D. Williams, certain real estate in the State of California. The decree further ordered that the contract of settlement

should forever and finally preclude the minor complainant, Alan H. Williams, from attacking the validity of the will, and it was further decreed that said will was in truth and in fact the valid will of the deceased John M. Williams.

The second codicil of the testator of April 5, 1897, making provision for the child of his second marriage, begins with the following recital: "Whereas it is my desire to make provision for any child or children from said marriage; but I do not feel that any child of said marriage should share in my estate in the same way as, and on an equality with the children of her, by whose frugality and watchfulness over the affairs of my household for many years, it has been made easier and possible for me to have accumulated the property I now possess." The testimony showed that the property of John M. Williams in Illinois was appraised, for the purpose of the inheritance tax, at the sum of $1,970,813.28, and that he had other property in the State of Minnesota, estimated by his son and son-in-law, who are his executors and trustees, to be worth about $1,500,000.00, so that the whole estate amounted to about $3,500,000.00.

D. RYAN TWOMEY, for appellants.

WILSON, MOORE & McILVAINE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Two questions are submitted for the decision of this court by the present record. The first question relates to the power of a court of chancery to authorize the settlement of a suit, brought by a minor to set aside a will, upon terms which, in the opinion of the court, are advantageous to the minor. The second question is, whether the compromise, which has been approved by the lower court in the present case, was for the best interests of the minor, Alan H. Williams.

*First*—It is well settled, that courts of chancery exercise a superintendence over infants and their property as a branch of their general jurisdiction. The protection of the rights of infants is one of the duties of courts of equity; and those courts from the earliest period have been vested with a broad and comprehensive jurisdiction over the persons and property of infants. In suits, begun in courts of chancery in reference to the persons and property of infants, the infant is treated as a ward of the court, and under its special cognizance and protection. (*Ames* v. *Ames*, 148 Ill. 321; 2 Story's Eq. Jur. chap. 35.) The question now under consideration has never been directly decided by this court, but the right of a court of chancery to sanction a compromise, made for the benefit of an infant, has been indirectly and impliedly recognized by this court.

In *King* v. *King*, 15 Ill. 187, where a decree had been entered, setting apart to a widow in a partition proceeding a certain gross sum as the value of her dower, and where the guardian, not being satisfied with the result, appealed the case to this court, we said: "We will not say that the court of chancery may not have jurisdiction to enter into, or to sanction a compromise on behalf of infants who are suitors before it, so as to satisfy the claim of the widow for dower by cash, but such a power should always be exercised with great care and circumspection, and only where it is clearly and manifestly to the interest of the infants to do so."

In *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Haley*, 170 Ill. 610, it was held that a parent had no implied authority, by reason of the existence of the parental relation, to compromise and settle a minor child's cause of action, and that one appointed by the court as next friend of an infant, or recognized by the court as acting in that capacity, had no power to settle the infant's cause of action without leave of court; but the plain inference is, that such settlement might be made

with leave of the court, and upon showing made that it was for the interest of the minor to make it.

In *Tripp* v. *Gifford*, 155 Mass. 111, where the defendant in a suit, brought by a minor, offered to show in bar that the father of the minor, while acting as his next friend, had in good faith made a settlement and the amount agreed upon had been paid, it was held that the evidence was inadmissible, as the father, as his next friend, had no right to compromise the litigation; but it was there said: "It may well be considered to be within his official duty to negotiate, if possible, a fair adjustment, without subjecting the plaintiff to the expense and risk of a trial. When, however, he assumes finally to conclude a settlement out of court, and to discharge the cause of action by an agreement *in pais*, under which he accepts less than the plaintiff's entire demand, he does more than is clearly within his authority to prosecute the action, and more than we think ought to be allowed, with due regard to the protection of the infant. Unless such a settlement is affirmed, either in terms, if brought to the attention of the court, or by an entry of judgment in regular course, it may fairly be held invalid. If it is not of such a nature as to commend itself to counsel, to whom as well as to the next friend the infant has a right to look for protection, it ought not to stand, unless sanctioned by the court."

These, and other cases recognize the jurisdiction of courts of equity in matters pertaining to the rights of infants. (*Hale* v. *Hale*, 146 Ill. 227). It would seem to be reasonable that, upon a bill filed by an infant to contest a will, a court of chancery should have the power to compromise and settle the issues, and by its decree sustain the will, and establish peace between the parties. It cannot be, that such a litigation must continue, probably to the disruption of the family, and perhaps to the bankruptcy of the estate, because some of the parties are not *sui juris*.

In the case of *Worthington* v. *Worthington*, 35 S. W. Rep. 1039, the parties to a controversy concerning a will,

among whom were infants, agreed to a compromise, and, the chancellor having adopted the agreement as the judgment of the court, the judgment on appeal was affirmed.

In *Reynolds* v. *Brandon*, 3 Heisk. 593, the court said: "The jurisdiction of a court of equity to enforce and ratify contracts for the compromise of doubtful rights is too well settled to require to be supported by authorities. * * * Whenever a court of chancery is called upon to sanction and enforce a contract of compromise, which involves the rights and interests of minors, it is bound, in the exercise of its general superintendence and protective jurisdiction over the persons and property of infants, to see that their rights and interests are not injuriously affected by such contract. They must have their day in court; they must be represented by guardians *ad litem;* the proof must satisfy the conscience of the chancellor that their rights and interests are promoted and secured by the compromise. When these requisites are complied with, it is not simply the right, but the duty, of the chancellor to uphold and enforce such compromises, especially where they settle family disputes and put an end to litigation as to doubtful rights. If the chancery court could not exercise its jurisdiction for the protection of the rights and interests of minors in such cases, the law extends to them less protection than it extends to adults;" and, in the case last quoted from, the decree, approving the compromise, was affirmed, and a former decision of the court was referred to with approval, which held as follows: "In the cases of family compromises, all that need be said here is, that agreements affecting them are upheld with a strong hand, and an equity has been administered in regard to them, which has not been applied to agreements generally, upon the ground that the honor and peace of families make it just and proper to do so."

Where such compromises have been carried into effect by courts of equity, the methods employed vary with the

circumstances, but there must be a full disclosure of the facts where infants are concerned, and their best interests are the chief ends which are sought to be secured.

In *In re Birchall,* L. R. 16 Ch. D. 43, it was said by Jessel, M. R.: "The court can approve a compromise on behalf of infants, but it cannot force one upon them against the opinion of their advisers. The practice, followed by myself and by Lord Romilly before me, at the Rolls, has been to require not only that the compromise should be assented to by the next friend, or guardian of the infant, but that his solicitor should make an affidavit that he believes the compromise to be beneficial to the infant, and that his counsel should give an opinion that he considers it to be so."

In *Brooke* v. *Lord Mostyn,* 10 Jur. (N. S.) 554, it was said: "If, in the course of a suit or any other proceeding in this court, a compromise is proposed between one or more adult persons and one or more infants, the court takes steps to ascertain whether it will be for the benefit of the infants that the proposal should be accepted. * * * In dealing with such a question it is the duty of the judge * * * to consider carefully the facts, and to determine, upon such consideration, what is best to be done for the infant, in like manner as a father would act for a son under similar circumstances. No doubt, in such cases, especially when the result of this evidence is doubtful, the court is much influenced by the opinion of the nearest relatives and guardians of the infant, who have no interest in the matter, except to promote the advantage of the child. When this has been done and the court has decided in favor of the arrangement, and the arrangement has been thereupon carried into execution, the whole thing is concluded." The case of *Brooke* v. *Lord Mostyn, supra,* was taken to the chancery division of the Appellate Court by appeal (10 Jur. (N. S.) 1114), and it was there said: "The rights of infants and incapacitated persons must in many cases be sacrificed, if

the power [to approve compromises] be not maintained;· and acts, which have been done under it, cannot be disturbed without property to a great amount being affected by the disturbance;" and it was there held, that a compromise under such circumstances would not be disturbed on any less ground than would disturb a similar compromise between adults, such as, for instance, actual fraud, it being there further said: "The question, whether this compromise was fairly and honestly made at the time, depends, as it seems to me, upon the facts as they were laid before the master, and through the master before the court; upon whether all that was material to be stated, and was within the knowledge of the parties, was fairly and honestly stated; for I desire distinctly to be understood as not intending to proceed on any error in judgment either on the part of the master, or on the part of the court."

The authorities, so far as they have been called to our attention, accord to a court of equity the power to authorize a compromise of litigation brought on behalf of a minor, where the evidence shows that there is a proper case for such a compromise.

*Second*—The second question, which arises here, is whether it was for the interest of the appellant minor to make the compromise, sustained by the decree of the court below. The bill, filed by the minor, attacked the will of the testator upon the sole ground that he was not of sound mind and memory when he made the will, but that he was at that time of such great age and infirmity, and his mind and memory were so impaired, as to render him wholly incapable of making a just distribution of his estate. The bill makes no charge whatever that any undue influence of any kind was exercised by anybody over the testator. After a careful examination of the testimony, we are satisfied that the conclusion, reached by the master and by the chancellor below in his decree, is sustained by such testimony. The only issue being

whether the testator was of sound mind and memory when he made his will, the evidence is overwhelming that he was a man of sound mind and memory at that time. William Holabird, an architect in Chicago, testified that he had known the deceased for some fourteen years before his death, and that during the summer and fall of 1897 when the witness was erecting a building for the deceased in Chicago, he had ample opportunity to judge of his business ability, and he testified that he considered the deceased one of the ablest men he had ever met; that, during the time he had business with him in 1897, Mr. Williams was capable of understanding and transacting business matters.

Robert E. Ismond, a real estate dealer in Chicago, had business dealings with the deceased, and testified that all matters of business were finally submitted to him for his decision, and that he had the final determination in all matters concerning which the witness had business with him, and that he perfectly understood his business matters, and was thoroughly competent to transact the same.

Frederick J. Thielbar, superintendent of building construction, testified that he met the deceased frequently in connection with the construction of a building in 1897, and that at such meetings the details and arrangements of the building were discussed, and that deceased showed good judgment in everything he did, and was fully capable of understanding and transacting his business.

Graham Taylor, a professor in the Chicago Theological Seminary, testified that he was well acquainted with the deceased, and advised with him from 1892 up to a time shortly before his death, and found him unusually alert and entirely capable of understanding and transacting his business.

Edward H. Webster, a physician in Evanston, testified that he had been the deceased's consulting physician; that he had known him since 1867 and had seen him

during the last years of his life; that he saw no evidence of mental failure at that time; that during the year 1897 he was as capable of understanding and transacting ordinary business matters as ever in his life; that "he was able to do that sort of thing better than the average man all his life."

The testimony of these witnesses is corroborated by the testimony of one of the deceased's sons and one of his sons-in-law, and, while they were interested parties, yet their evidence shows that the deceased exercised control and management over his business matters up to the time of his death, and that all matters, connected with his property, were submitted to him for decision.

There is other convincing evidence of the mental capability of the testator in the letters, written by him during the last years of his life to his son and son-in-law concerning his business matters. About a dozen of these letters are in the record, and show that the mind of the deceased was clear and fully capable of understanding any business matter, which was brought before him.

No evidence whatever has been produced showing that the deceased was incapable of making a valid will, and the reasonable conclusion would seem to be that such evidence could not be obtained.

In view of the testimony thus presented, the conclusion is almost irresistible that, if the suit brought to set aside the will of John M. Williams should be allowed to continue, his inability to make a will by reason of unsoundness of mind and memory could not be established by proof. Therefore, we are of the opinion that the compromise made, which is shown to be satisfactory to the mother of the infant and to his next friend, and to those, who have his interests at heart, was properly sustained by the decree of the circuit court.

Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*