(No. 49422.—

THE NATIONAL BANK OF BLOOMINGTON, Adm'r, *et al.*, Appellees, v. NORFOLK & WESTERN RAILWAY COMPANY *et al.*, Appellants.

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

162

Costigan & Wollrab, of Bloomington, for appellants.

Jerome Mirza, of Bloomington, for appellees.

Leonard M. Ring, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Francis D. Morrissey and Edward J. Zulkey, of Baker & McKenzie, of Chicago, for *amici curiae* Atchison, Topeka & Santa Fe Ry. Co. *et al.*

MR. JUSTICE MORAN delivered the opinion of the court:

On January 5, 1970, in Bloomington, an auto operated by the decedent, Ray Weldon Groves, was struck by a freight train operated by Norfolk & Western Railway Company. Groves died seven days later as a result of the collision. While a four-count amended complaint was filed in the circuit court of McLean County, against additional defendants, we are here concerned only with counts I, II and IV, which went to the jury, and with defendants Norfolk & Western Railway Company and Wabash Rail-

road Company (hereafter referred to in the singular as defendant).

Counts I and IV were brought by the administrator of decedent's estate, the National Bank of Bloomington (plaintiff-administrator), and count II was brought by the decedent's widow, Marie Booe Groves, individually (plaintiff-wife).

Count I charged that defendant's negligent failure to provide adequate warning devices for motor vehicles at the instant railroad crossing and its negligent violation of rules of General Order No. 138 of the Illinois Commerce Commission (ICC) caused the wrongful death of decedent. Plaintiff-administrator sought pecuniary damages under the Wrongful Death Act (Ill. Rev. Stat. 1969, ch. 70, pars. 1, 2). Count II incorporated the allegations of count I, and alleged that, as a result of defendant's negligence, plaintiff-wife became liable under the family expense act (Ill. Rev. Stat. 1969, ch. 68, par. 15) for certain medical, hospital and funeral expenses for which she sought compensatory damages. Count IV charged defendant with the wilful violation of General Order No. 138, Rule 205 of the ICC, by its failure to keep its right-of-way clear of obstructions. Plaintiff-administrator sought both actual and punitive damages under the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77). While one paragraph of count IV recites that the action was brought under both the Public Utilities Act and the Wrongful Death Act, the pleadings in the body of the count allege violation of the Public Utilities Act.

The jury's verdict awarded $20,000 pecuniary damages under count I for the wrongful death of the decedent; $4,348.60 compensatory damages under count II for medical, funeral and related expenses; and $300,000 punitive damages under count IV for the wilful violation of Rule 205 of General Order No. 138 of the ICC. The circuit court entered judgment for the defendant, notwith-

standing the verdict, as to the $300,000 punitive damages. Plaintiff-administrator appealed the judgment *n.o.v.* that vacated the award for punitive damages under count IV. Defendant appealed from the two judgments entered against it under counts I and II.

The appellate court affirmed the judgments entered under counts I and II, but a majority of that court reversed the circuit court's judgment for defendant, *n.o.v.*, on the question of punitive damages and reinstated the award of $300,000. (46 Ill. App. 3d 757.) The appellate court unanimously issued a certificate of importance to this court in this case and in a companion case, *Churchill v. Norfolk & Western Ry. Co.* (1977), 46 Ill. App. 3d 781, *aff'd* (1978), 73 Ill. 2d 127.

Defendant claims that the decedent was guilty of contributory negligence as a matter of law; that section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) does not create a cause of action in a personal representative for compensatory or punitive damages in a death case; that defendant did not violate Rule 205 and was not, therefore, guilty of wilful misconduct which would entitle plaintiff-administrator to recover punitive damages under section 73 of the Public Utilities Act; and that the award of $300,000 punitive damages was excessive.

Defendant's assertion that the decedent was contributorially negligent rests upon the following evidentiary facts. The decedent was 73 years old, a careful driver, and in good health on the day of the collision. He had traversed the railroad crossing in question on numerous occasions so that he was aware that trees, shrubbery and a house obstructed clear visibility of the railroad tracks to the north when approaching the crossing from the east. Site-line measurements to the north along the railroad tracks, taken by defendant from various points east of the crossing, indicated that from zero to 10 feet to the east of

the crossing, one can see a quarter of a mile down the tracks; from 20 feet, one can see 450 feet; from 30 feet, one can see only 110 feet; from 40 feet, one can see only 85 feet; from 50 feet, one can see 80 feet; and from 100 feet, one can see 60 feet. The crossing itself was not equipped with any warning device other than the traditional crossbuck sign, stating "Railroad Crossing."

The decedent was traveling west at 20 to 35 miles per hour on a street which had a posted speed limit of 30 miles per hour. The only person who testified that he saw the decedent's vehicle immediately before impact was a trainman seated on the east side of the moving train. The trainman testified that he observed the car for less than a total of one second: a split second before the car disappeared behind the obstructing house and a split second when it emerged on the other side. The train was moving at a speed of 22 to 35 miles per hour as it approached the crossing. Its whistle had been blowing from the time the train was approximately 1,500 feet north of the crossing. Its light was on and its bell was ringing. The windows of the train and the windows of decedent's vehicle were closed due to the cold weather. Snow was on the ground and the pavement was slippery. Evidence indicated that neither the train nor the decedent braked prior to impact and that the decedent did not see or hear the train approaching although he did look both ways. Evidence further established that the front of the decedent's vehicle and the front of the train collided.

In answer to a special interrogatory, the jury specifically found that the decedent was not guilty of contributory negligence. Under the familiar *Pedrick* standard, the finding in this case may be overturned only if all the evidence, when viewed in its aspect most favorable to plaintiffs, so overwhelmingly favors defendant that no finding of the decedent's freedom from contributory negligence could ever stand. *Pedrick v. Peoria & Eastern*

*R.R. Co.* (1967), 37 Ill. 2d 494, 510.

It is well established that railroad crossings are dangerous, and that in approaching them a person is required to diligently use the senses of sight and hearing and to exercise a degree of care commensurate with the known danger. (*Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, 535; *Moudy v. New York, Chicago & St. Louis R.R. Co.* (1944), 385 Ill. 446, 452.) The law casts disfavor on the person who claims that upon approaching an unobstructed crossing he looked but did not see an oncoming train. However, the law readily acknowledges that if a crossing is obstructed, a person, diligently using the senses of sight and hearing and exercising the ordinary care expected under the circumstances, might be excused for failing to perceive that the train was approaching. (*Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, 536.) A person is not required to come to a complete stop before traversing an obstructed crossing, nor is he required to keep a continuous lookout in the direction from which a train may be coming. (*Chicago & Alton R.R. Co. v. Sanders* (1894), 55 Ill. App. 87, 91, *aff'd* (1895), 154 Ill. 531; *Baker v. Norfolk & Western Ry. Co.* (1970), 120 Ill. App. 2d 296, 310, quoting *Hughes v. Wabash R.R. Co.* (1950), 342 Ill. App. 159, 167.) Generally, in those cases in which a crossing is obscured, whether a plaintiff exercised due care and whether the obstruction prevented the plaintiff from perceiving an oncoming train are questions of fact for the jury and not matters of law which would require the court to intervene. *Humbert v. Lowden* (1944), 385 Ill. 437, 445; *Gray v. Terminal Railroad Association* (1962), 37 Ill. App. 2d 376, 379.

In the case at bar, it is conceded that the crossing was obstructed by trees, shrubbery and a house. Evidence indicated that the decedent looked both ways, but that he did not see or hear the train approaching from the north.

The trainman, who was on the train and looking in the direction of the decedent's vehicle, testified that he saw the decedent's car for a total of less than one second. We conclude, when viewing this and all the other evidence in a light most favorable to plaintiffs, that the jury could reasonably have found the decedent was exercising care for his own safety. The jury's special finding that the decedent was not contributorially negligent must, therefore, remain undisturbed.

Defendant next contends that section 73 of the Public Utilities Act does not create a cause of action in a personal representative for compensatory or punitive damages in a death case. Defendant's contention actually combines two distinct propositions: first, that section 73 of the Public Utilities Act does not create a cause of action in a personal representative for compensatory and punitive damages for the wrongful death of decedent, and, second, that the Act does not create a cause of action in a personal representative for compensatory and punitive damages for the predeath injuries to the decedent. We need not address the first proposition since, in count I, plaintiff-administrator recovered damages for the death of decedent under the Wrongful Death Act, and since, in count IV, plaintiff-administrator does not seek damages for wrongful death. As to the second proposition, however, we hold that plaintiff-administrator may recover compensatory and punitive damages under the Public Utilities Act on the basis of the injuries decedent sustained prior to his death.

Plaintiff-administrator alleged in count IV that the decedent received extremely serious injuries which, before he died, required his hospitalization and the administration of medical services. Evidence at trial established that the decedent was conscious but in a state of shock during the seven days between his injury and his death. The jury was instructed on the questions to be resolved under count IV: Was the decedent injured and killed as a result of

defendant's violation of the ICC rule? Was defendant's violation wilful? Was the decedent free from contributory wilful and wanton conduct? Did the decedent sustain damages to the extent claimed? On this count, the court further instructed the jury that the plaintiff-administrator had the burden of proving that the decedent was free from contributory wilful and wanton conduct, that defendant wilfully violated the ICC rule and that the wilful violation was a proximate cause of the decedent's injuries and death. At defendant's request, special interrogatories were submitted to the jury on the questions of defendant's wilful and knowing violation of the ICC rule and of the decedent's contributory wilful and wanton conduct. The jury answered the special interrogatories against defendant and entered a verdict of $300,000 punitive damages in favor of plaintiff-administrator. It is clear that by awarding punitive damages on count IV, the jury also found that the decedent sustained actual damages prior to his death as a result of defendant's wilful violation of the ICC rule.

Count IV was brought under section 73 of the Public Utilities Act, which provides:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, *such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment.* An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77.

There can be no question that the decedent's pain and

suffering which resulted from defendant's wrongful and wilful act is an "injury" contemplated by the Act and one for which a surviving person could recover both compensatory and punitive damages. The law, of course, has always recognized that, if a person survives, he may bring a common law or statutory action against a party whose wrongful conduct has caused him such personal injury. At common law, however, the same action would abate upon the death of the injured person. To remedy this injustice, a survival statute was enacted (originally in 1872) to allow an action, such as the instant action to recover damages for an injury to the person, to survive the death of the injured person. (See Ill. Rev. Stat. 1977, ch. 110½, par. 27–6.) The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died.

It is now firmly established in Illinois that the Wrongful Death Act (Ill. Rev. Stat. 1977, ch. 70, par. 1 *et seq.*) is not the exclusive remedy when death results from a given tortious act. (*Saunders v. Schultz* (1960), 20 Ill. 2d 301; *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423.) The reason for this rule was best expressed in *Murphy* when this court had an opportunity to examine the interrelationship between survival actions and wrongful death actions. There, the decedent's estate sought recovery under the common law for the physical and mental suffering and for lost wages sustained by the decedent during the nine-day interval between his injury and his death. In concluding that the cause of action for pain and suffering and lost wages does not abate if the injured person subsequently died as the result of the same tortious act which caused him injury, the court reasoned:

"There may be a substantial loss of earnings, medical expenses, prolonged pain and suffering, as well as property damages sustained, before an

injured person may succumb to his injuries. To say that there can be recovery only for his wrongful death is to provide an obviously inadequate justice. Too, the result in such a case is that the wrongdoer will have to answer for only a portion of the damages he caused. Incongruously, if the injury caused is so severe that death results, the wrongdoer's liability for the damages before death will be extinguished. *It is obvious that in order to have a full liability and a full recovery there must be an action allowed for damages up to the time of death, as well as thereafter.*" (Emphasis added.) *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431.

This court's decision in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, does nothing to abate the defendant's *statutory liability* for punitive damages upon the death of the injured person. In *Mattyasovszky,* where the decedent died instantly, his estate sought to recover punitive damages which the decedent, *under the common law,* might have recovered had he survived. The court summarily denied recovery of punitive damages because the Survival Act itself has "never been thought to authorize the award of punitive damages." (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 33.) The court, however, did not base its denial of common law punitive damages on the broad proposition that punitive damages are unrecoverable when injury results in death. The court held that the imposition of punitive damages was improper in light of the fact that the party whose conduct was primarily responsible for the injury had been dismissed from the action.

Here, in contrast to *Mattyasovszky,* punitive recovery was sought, not under the common law, but directly under the Public Utilities Act, which expressly provides that "if the court shall find that the act or omission was wilful, the

court may in addition to the actual damages, award damages for the sake of example and by way of punishment." (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77.) The Survival Act itself neither authorizes nor prohibits punitive damages. It is merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person when the action would otherwise have abated at common law. Unquestionably, the Public Utilities Act intends to punish an offender and discourage similar offenses by allowing punitive damages to be awarded whenever an injury results from a defendant's wrongful and wilful statutory violation. It would pervert the Act's intention if reprehensible conduct, so severe in consequence that resultant injury, culminating in death, was to be insulated from punitive liability under the very act designed to vigilantly promote safety by public utilities. Punitive damages for injuries prior to death should be unaffected by the subsequent death of the injured person, for punitive recovery addresses only the nature and gravity of a defendant's wrongful and wilful act. Under the Act, defendant's punitive liability accrued from the moment decedent sustained personal injury and, upon decedent's death, his right to recovery passed unabated to his estate. Only in this manner can we observe the dictates of *Murphy* and provide for "a full liability and a full recovery *** for damages up to the time of death" (56 Ill. 2d 423, 431).

In answer to one of the special interrogatories, the jury specifically found that the defendant wilfully and knowingly violated Rule 205 of General Order 138 of the Illinois Commerce Commission. The rule provides:

"Every railroad shall keep *its right of way* reasonably clear of bush, shrubbery, trees, weeds, crops, and other unnecessary obstructions for a distance of at least 500 feet each way from every grade crossing where such things materially would obscure the view of approaching trains to travelers on the highway." (Emphasis added.)

Defendant contends that the trees, shrubbery and house which obstructed the railroad crossing in this case were not on its right-of-way and that it, therefore, bore no duty to clear the obstructions.

The evidence introduced in the trial court indicated the following. The railroad crossing consisted of two sets of tracks. The set of tracks to the west was leased by Penn Central and the set of tracks to the east was leased by Norfolk & Western Railway Company from the Wabash Railroad Company. The railroads' right-of-way extended for 120 feet: the Penn Central right-of-way was 65.55 feet wide, and defendant's right-of-way stretched the remaining 54.45 feet. Trees and shrubbery in the backyard of the house immediately to the east of a fence and 3 feet 10 inches of the house itself were all within the defendant's 54.45 foot right-of-way. A deed to the property, dated November 13, 1923, indicated no encumbrance of any kind. Defendant never used any of the property to the east of the fence, nor had it ever expressed any claim to this portion of its right-of-way.

In an answer to an interrogatory, defendant admitted that its right-of-way at the crossing measured 54.45 feet wide. It asserts, however, that no evidence established that its right-of-way was 54.45 feet wide immediately north of the crossing at the point of the obstructions. We disagree. A station map, dated June 30, 1919, admitted into evidence, showed that the eastern boundary of the right-of-way proceeds parallel to the tracks and does not narrow to the north of the crossing. The map further revealed that the fence was clearly within defendant's right-of-way. Admitted into evidence, too, was a plan and profile drawing prepared by Norfolk & Western in April of 1970. Its representations corresponded exactly to those of the 1919 station map and showed the fence, shrubbery, trees and part of the house to be on defendant's right-of-way. From these exhibits it is clear that from 1919

to 1970 the right-of-way was unchanged, that its width north of the crossing was the same as the width at the crossing, and that the obstructions were, indeed, on defendant's right-of-way.

The fact that defendant made no claim to its right-of-way against the owner of the property is of no consequence. Defendant does not abandon its right-of-way by mere nonuse. (*Golconda Northern Ry. v. Gulf Lines Connecting R.R.* (1914), 265 Ill. 194, 206.) Moreover, as a public franchisee, defendant *cannot* dispose of its right-of-way without the consent and approval of the Illinois Commerce Commission. Any attempt to do so is void. (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 27.) The record affords no evidence of the lawful abandonment of the defendant's right-of-way. Accordingly, we hold that there was sufficient evidence for the jury to find that the obstructions were on defendant's right-of-way and that its failure to keep its right-of-way reasonably clear violated Rule 205.

The jury, in response to defendant's special interrogatory, found that defendant's violation was wilful. Defendant does not here contest that finding. Instead, it repeats the same argument of nonownership of the right-of-way upon which the obstructions are located and states "the only factual basis on which the punitive damage award can stand is if the [defendant] wilfully failed to keep *[its] right-of-way* free from obstructions for a distance of 500 feet from the crossing." (Emphasis by defendant.) Inasmuch as the evidence showed and the jury correctly found that the obstructions were on defendant's right-of-way and that those obstructions were closer than 500 feet from the crossing, we conclude that the award of punitive damages under section 73 of the Public Utilities Act was proper.

We also find that the jury award of $300,000 punitive damages was not excessive under the circumstances in this case. The Public Utilities Act expressly authorizes punitive

damages to punish the tortious public utility for wilfully perpetuating a danger to the traveling public. The evidence indicated that the volume of traffic traversing the railroad crossing was high and that, in 1967, the city of Bloomington widened and paved the road intersecting the crossing to accomodate the burgeoning traffic. Moreover, three accidents, each similar in circumstance to the instant accident, occurred at the crossing between 1967 and 1970. Nevertheless, the defendant made no effort to clear the obstructions or to take steps to ensure the safety of the traveling public.

For the reasons stated, the judgment of the appellate court is affirmed. The cause is remanded to the circuit court of McLean County with directions to enter judgment upon the verdicts of the jury.

*Affirmed and remanded,*
*with directions.*

MR. JUSTICE RYAN, dissenting:

This is a companion case to *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127. In addition to the reasons stated for my dissent in *Churchill,* there are several issues here which will require additional comment.

Here, the majority opinion permits the recovery of punitive damages authorized by section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) by the decedent's estate through the use of the Survival Act (Ill. Rev. Stat. 1969, ch. 3, par. 339, now Ill. Rev. Stat. 1977, ch. 110½, par. 27–6). In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 33, this court stated, in speaking of the Survival Act, "[t]his statute has never been thought to authorize the award of punitive damages." The majority opinion in the case we are now considering attempts to distinguish that holding by pointing out that in *Mattyasovszky* recovery of *common law* punitive damages was sought, whereas in this case, *statutory*

punitive damages, as authorized by section 73 of the Public Utilities Act, are involved.

I do not understand the relevance of this distinction. The majority correctly states that the Survival Act "is merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person." (73 Ill. 2d at 174.) I cannot understand how this vehicle can safely carry over to the decedent's estate a cause of action that he had before his death, for punitive damages under section 73 of the Public Utilities Act, but cannot carry over to his estate one that he may have had for punitive damages by virtue of some common law outrageous conduct not specifically condemned by statute. There is nothing in section 73 that would show a legislative intent that punitive damages under the Act should survive the death of the injured party, nor is there anything in the Survival Act that would indicate that statutory punitive damages should survive but that common law punitive damages should not. It appears to me that if the Survival Act is a sufficient vehicle for preserving a cause of action for statutory punitive damages, it should also be capable of preserving a cause of action for common law punitive damages. Conversely, if its language is not broad enough to permit the survival of a cause of action for common law punitive damages, then it is likewise not broad enough to permit the survival of a statutory cause of action for punitive damages.

The only construction that has ever been placed on our Survival Act by this court is that it does not authorize the award of punitive damages. In *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, this court held that actions for predeath injuries survive under the Survival Act so that a wrongdoer may not escape liability for a portion of the damages he caused and so that there may be full recovery for the injuries and damages occasioned by the wrong. The holding of this case spoke of the compensatory nature of

the recovery permitted under the Survival Act. It lends no support to the holding of the majority opinion in our case. Also, contrary to a statement in the majority opinion, this court, in *Mattyasovszky* did not summarily deny recovery of punitive damages because the Survival Act "has never been thought to award punitive damages." Mr. Justice Schaefer, writing for this court, after setting forth the provisions of the Survival Act, noted that this court, in *Murphy,* had emphasized the compensatory nature of the damages authorized, and noted that there was nothing in *Murphy* which would suggest a change in the law of this State, which for more then 100 years has limited recovery under the Act to compensatory damages. Then after rejecting decisions of other States which had construed the language of their survival acts as allowing recovery of punitive damages, the court stated:

> "The actions which survive under our statute are 'actions to recover damages for an injury to the person,' and as we have pointed out, the very decisions that have recently expanded the right to recover under it have emphasized the compensatory nature of the recovery it authorizes." 61 Ill. 2d 31, 34.

If it is the intention of the majority of this court to overrule *Mattyasovszky,* it would have been more candid in this case to face the question of the survival of punitive damages squarely instead of drawing a distinction which does not exist between statutory and common law punitive damages. With the foundation of *Mattyasovszky* so weakened, we can expect soon another assault upon the principles therein announced.

It is true that the purposes of awarding punitive damages, punishment and deterrence, are capable of being fulfilled by permitting actions for punitive damages to survive the death of the injured party. (See Riley, *Punitive Damages: The Doctrine of Just Enrichment,* 27 Drake L.

Rev. 195, 206 (1978).) However, the purposes of punishment and deterrence do not fall within the acknowledged and established purpose of the plain language of our Survival Act, which is to compensate the estate of the decedent for the damages and injuries he suffered prior to death.

A very serious error in the opinion in this case involves the judicial transformation of a cause of action for wrongful death into one under the Survival Act. The opinion acknowledges that one paragraph of count IV recites that the cause of action is brought under both the Wrongful Death Act and the Public Utilities Act. But then the court finds that since the decedent lived for a period of time and had some very serious injuries, there were predeath injuries for which his estate should recover under the Survival Act. Count IV, under which punitive damages were sought, was an action for wrongful death and was not an action by the administrator for the benefit of the decedent's estate. One has only to look at the entire amended complaint to realize the nature of the cause of action under count IV. Count I is a wrongful death action by the administrator in which it is alleged that the decedent left surviving him his widow and two adult children as his next of kin. And it is alleged in that count that the action is brought under Illinois Revised Statutes, chapter 70, paragraphs 1 and 2 (the Wrongful Death Act).

Count II is an action by the widow alone, brought under the family expense statute. Counts III and IV were added as an amendment to the complaint. Count III is by the administrator and it alleges, as did count I, that the decedent left surviving him his widow and two adult children as his next of kin, and then alleges, as did count I, that the action was brought under Illinois Revised Statutes, chapter 70, sections 1 and 2, and added that it was also brought under chapter 111 2/3, section 77 of the Illinois Revised Statutes. This last statutory provision is

section 73 of the Public Utilities Act. Thus, this count was an action for wrongful death based on the defendant's violation of the Public Utilities Act. This count sought only compensatory damages. Count IV also alleged that the decedent left surviving him his widow and two adult children as his next of kin, the same allegations as were contained in the wrongful death action in count I and the wrongful death action in count III.

Paragraph 7 of count IV again specifically alleges, as did count I and count III (both wrongful death counts), that the action was brought under Illinois Revised Statutes, chapter 70, sections 1 and 2, and added that it was also brought under chapter 111 2/3, section 77, Illinois Revised Statutes, which is section 73 of the Public Utilities Act. Count IV, in addition to praying compensatory damages, as had been prayed in count I and count III, prayed for punitive damages. Paragraphs 1 and 2 of chapter 70, Illinois Revised Statutes, are a part of the Wrongful Death Act, and in count IV the action was brought under the Wrongful Death Act, seeking compensatory and punitive damages for the wrongful death resulting from a violation of the Public Utilities Act. There is no reference in the complaint to the Survival Act, nor is there any allegation that the administrator is seeking recovery for predeath injuries for the benefit of the decedent's estate.

Although actions under the Wrongful Death Act and under the Survival Act are both maintained by the decedent's representative, the recovery under the Wrongful Death Act is for the benefit of the widow and next of kin, and does not become a part of the decedent's estate. Distribution of the award is made by the court according to the degree of dependency.

Thus, in this case, the decedent, having left a widow and two adult children, the court would undoubtedly distribute a substantial amount of the wrongful death

recovery to the decedent's widow.

If the decedent's representative recovers under the Survival Act, the recovery becomes a part of the decedent's estate and subject to the obligations of the estate and to distribution according to statute or a will. The widow and two adult children of the decedent would take their distributive shares of the estate, which could be substantially different from that each would receive under the Wrongful Death Act. Of course, if the decedent left a will, the children could be eliminated entirely from participation in the recovery. The very theory of recovery and the elements of damages are different under the two acts and there are different tax consequences. Each act creates a separate and distinct cause of action, each filling different, although at times, complementary purposes.

When count IV alleged that the cause of action was brought under paragraphs 1 and 2 of chapter 70, Illinois Revised Statutes, that allegation can only mean that the cause of action is one for wrongful death for the benefit of the widow and next of kin, who were named in the allegations in that count. The jury returned a verdict of $300,000 under the prayer of this count. I know of no statutory, constitutional, or even inherent power that authorizes this court to take this $300,000 verdict away from the widow and next of kin and vest it in the decedent's estate.

It is apparent to me that the majority opinion recognized that section 2 of the Wrongful Death Act authorizes only the recovery of fair and just compensation for the pecuniary injuries resulting from the death and does not authorize the recovery of punitive damages. Realizing this, the opinion, in an attempt to preserve the recovery of punitive damages, has transformed the Wrongful Death Act into one maintained under the Survival Act. No matter how flagrant a defendant's conduct may be, and no matter how justified may be an award of punitive

damages, a court has no authority, simply because punitive damages cannot be awarded under the Wrongful Death Act, to restructure the entire case solely to preserve the verdict against the defendant.

Something more than the mere commission of a wrong is required for punitive damages. "There must be circumstances of aggravation or outrage, such as spite or 'malice', or a fraudulent or evil motive on the part of the defendant ***" (Prosser, Torts sec. 2, at 9-10 (4th ed. 1971)). Under section 73 of the Public Utilities Act punitive damages may be awarded only when the violation or omission is "wilful." The evidence in this case shows no such wilful or outrageous conduct on the part of the defendant.

The majority only assumes that the obstructions were on the defendant's right-of-way. The opinion seems to place the burden on the railroad to prove that the obstructions were not on its right-of-way when, in fact, the burden is on the plaintiffs to prove that the obstructions were on the defendant's right-of-way, and that there was a wilful violation on the part of the railroad in its failure to remove the obstructions. The record shows that the obstructions consisted of trees and shrubbery, and 3 feet 10 inches of a house. These obstructions are located on property that is owned by an individual and the record traces his title back to a conveyance in 1923 and is silent as to the title prior to that time. Nothing in this case shows that the property on which these obstructions are located constituted the defendant's right-of-way since then. The opinion refers to a station map dated 1919 which shows that the right-of-way included the property on which the obstructions are located; however, the burden is on the plaintiff to show that the obstructions were on the defendant's right-of-way on the date of the accident and not in 1919. Even the 1919 station map relied upon by the majority opinion shows a fence within the right-of-way,

which indicates that even at that time, at least part of the property upon which the obstructions are located was fenced off from the right-of-way. Furthermore, I would not consider the failure of the railroad to cut the trees and shrubbery of the owner of the property, or the failure to remove 3 feet 10 inches of his house as constituting the outrageous or wilful conduct necessary to support an award of punitive damages.

For these reasons above stated, I dissent from the majority holding.

MR. JUSTICE UNDERWOOD joins in this dissent.