JEAN LYONS, Guardian of the Person and Estate of Richard Raymond Whittington, a Minor, Plaintiff-Appellant, *v.* BADEN WHITTINGTON, Adm'r of the Estate of Ralph Whittington, Deceased, *et al.*, Defendants-Appellees.

Third District   No. 81—424

Opinion filed September 14, 1982.—Rehearing denied October 15, 1982.

Kenneth A. Kozel, of La Salle, for appellant.

Kevin Kelly, of La Salle, for appellee Daniel Bute.

Thomas A. Tonozzi, of Perona, Perona & Tonozzi, of Spring Valley, for appellee Baden Whittington.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Jean Lyons, guardian of Richard Raymond Whittington, a minor child, appeals from orders of the circuit court of La Salle County which required her to participate in the settlement of two causes of action in which her ward had an interest. The state of affairs giving rise to this litigation is fairly simple, but the legal ramifications have become quite complex.

On May 2, 1978, Cherry Whittington shot Ralph Whittington 11 times with a shotgun, and he died from his wounds later the same day. Cherry was prosecuted on charges of murder and manslaughter, but she was acquitted on all charges by reason of insanity. Daniel Bute was named her conservator and is her legal representative in this litigation. The decedent, Ralph Whittington, left surviving three children by previous marriages, and his brother Baden Whittington was named administrator of Ralph's estate. Although Cherry and Ralph had lived together as husband and wife for nine years, there is no public record of their marriage, and it is doubtful that a marriage ever took place. Cherry gave birth to Richard Raymond about two months before she killed Ralph. According to the record on appeal, Richard Raymond's paternity is in dispute. At one time Cherry stated that Ralph was the father, but at other times she has denied Ralph's paternity and named another man as putative father of the boy. Jean

Lyons, who has been appointed guardian of Richard Raymond Whittington, is Cherry's aunt.

Out of these circumstances, five separate actions have been filed. Estate proceedings have been opened for Cherry Whittington, an incompetent; for Ralph Whittington, decedent; and for Richard Raymond Whittington, a minor. In addition, Baden Whittington as administrator of decedent's estate filed a wrongful death action against Cherry Whittington which is being defended under a reservation of rights by Economy Fire & Casualty Company, issuer of a homeowner's insurance policy to decedent. Finally, an interpleader action has been filed in the United States District Court by Bankers Life & Casualty Insurance Company, insurer of the life of decedent. Cherry was named as the beneficiary under the life policy, but the proceeds were claimed by Ralph's administrator and by Richard Raymond's guardian, as well as by Cherry's conservator. The $30,000 insurance proceeds were paid to the clerk of the Federal court, and by the time this cause was settled, the accumulated interest had brought the total on deposit to $36,000. Federal jurisdiction was invoked under the diversity of citizenship clause, Bankers Life being an Iowa corporation, and the district court ruled that Cherry was not barred from receiving the insurance proceeds on the ground that she was profiting from her wrongful act since she was insane at the time of the shooting and thus not accountable for her actions. The court entered summary judgment in favor of Cherry, but upon appeal, the Seventh Circuit Court of Appeals reversed the cause and remanded for trial. This case is still pending in the District Court.

While the Federal suit was in progress, other legal proceedings were underway in the circuit court of La Salle County. The guardian Lyons filed a petition for a child's award in the estate of Ralph Whittington and filed two claims against the estate of Cherry Whittington based upon her alleged responsibility for the wrongful death of Ralph Whittington. Economy, the homeowner's insurer, filed a motion to dismiss the guardian's wrongful death claim on the ground that only the personal representative of the decedent can bring a wrongful death action.

As indicated above, Baden Whittington as administrator of decedent's estate did file a wrongful death action against Cherry on behalf of decedent's four children, including Richard Raymond. Economy, the insurer under the homeowner's policy, has threatened a declaratory judgment action on the ground that it has no duty to defend Cherry under its policy because Cherry and Ralph were never married, and because the shooting was not an "accidental injury" within the cover-

age of the policy.

The administrator of Ralph's estate worked out a settlement of this litigation that was agreed to by Cherry's conservator and by both insurance companies, but which was objected to by the guardian, Lyons. The State trial court approved the settlement and entered an order which was filed in all four cases pending in the circuit court of La Salle County. The settlement order provided that Ralph's administrator was to accept $5,500 for the wrongful death action against Cherry, that the guardian's wrongful death claim against Cherry's estate was to be dismissed, that the administrator and the guardian were to execute releases in favor of Economy for all wrongful death claims, that the interpleader funds held by the Federal district court were to be distributed to the administrator ($9,000), the conservator ($18,000), and to a banking institution on behalf of Richard Whittington ($9,000), in return for which the administrator, the conservator and the guardian were required to release all claims to the life insurance proceeds. The court indicated that Richard Raymond's share of the life insurance proceeds were to be free of all fees and costs, and that action upon a petition to replace Lyons as the guardian of the minor's estate would be considered separately.

The guardian has appealed from the settlement order entered in all four circuit court causes. She presents two issues for review: (1) Did the circuit court of La Salle County have jurisdiction to order a settlement of the Federal interpleader suit, and (2) did the court fail to protect the rights of the minor in dismissing the guardian's claims against the estate of Cherry Whittington?

■ The guardian asserts, firstly, the familiar rule that where two courts have concurrent jurisdiction, the court where jurisdiction first attaches retains jurisdiction to the exclusion of the other court. (*E.g.*, *Wilson v. Schnettler* (1961), 365 U.S. 381, 384 n.3, 5 L. Ed. 2d 620, 628 n.3, 81 S. Ct. 632, 635 n.3.) She reasons that the Federal court thus had exclusive jurisdiction of the interpleader action and of the insurance proceeds which are the subject of that action. She argues, secondly, that the circuit court lacks probate jurisdiction to determine the rights of beneficiaries of insurance contracts under section 1 of "An Act concerning rights of a person entitled to succeed upon the death of another person to an interest in certain third-party beneficiary contracts and assignments" (Ill Rev. Stat. 1981, ch. 110½, par. 401), which provides that the Probate Act of 1975 does not govern the rights of beneficiaries to proceeds of life insurance policies.

Baden Whittington, the administrator of decedent's estate, defends the settlement orders by relying upon the grant of authority

contained in section 19—8 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 19—8) which provides:

"By leave of court without notice or upon such notice as the court directs, a representative may compound or compromise any claim or any interest of the ward or the decedent in any personal estate or exchange any claim or any interest in personal estate for other claims or personal estate upon such terms as the court directs."

Thus, when the administrator of an estate desires to settle a lawsuit, he must seek approval of the court where the estate proceeding is pending regardless of where the suit was filed. Here, of course, the administrator was involved in two lawsuits, one in Federal court and the other in the circuit court, each of which required him to take a position that was inconsistent with his position in the other. In other words, in the interpleader suit, the administrator was contending that Cherry knew what she was doing when she killed Ralph and that she should not be allowed to profit from her wrongful act, while in the wrongful death action the administrator had to move that Cherry's shooting of Ralph was "accidental" in order to qualify for coverage under the insurance policy. This dilemma naturally strongly suggested the need for settlements.

By ordering the representatives in the three estate proceedings to settle their claims against Bankers Life on the terms specified, the circuit court of La Salle County was not interfering with the jurisdiction of the Federal court to determine the factual and legal issues involved in the merits of those claims. The circuit court was exercising its probate jurisdiction in accordance with the statutory authority set out in section 19—8, and the guardian, Jean Lyons, was clearly subject to that jurisdiction since her powers derive from her appointment by that court. We conclude that the circuit court did not lack jurisdiction to enter the settlement order.

■ Lyons also claims that the trial court erred in dismissing the wrongful death claim which she filed in the estate of Cherry on behalf of the minor Richard Raymond. She contends that the Wrongful Death Act is not an exclusive remedy and that the minor has a right to sue under the survival statute (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6) for damages accruing as a result of Ralph's wrongful death. She reasons that the survival statute is silent as to who may bring an action pursuant to the survival statute so the child of the decedent has just as much right to recover damages as does the administrator of the decedent's estate. She cites no authority for this proposition, and we note that the statute has been authoritatively construed to the

contrary. In *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, the Supreme Court of Illinois construed the Survival Act as not creating a cause of action where one did not previously exist but rather as being the vehicle by which a pre-existing cause of action survives the death of the injured person. The court stated, "The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." (73 Ill. 2d 160, 172, 383 N.E.2d 919, 923.) Since the guardian does not and cannot contend that the minor's claim against Cherry for damages resulting from Ralph's wrongful death constitutes a cause of action which Ralph had before his death, we conclude that her entire argument relating to the Survival Act is without merit.

The guardian also contends that the trial court abused its discretion in approving the settlement proposal because the provisions of the settlement did not adequately protect the interest of the minor Richard Raymond. For example, she insists that it was unfair and unjust to enjoin her from pursuing her claims against Cherry for Ralph's wrongful death when the administrator was seeking to settle the wrongful death action on behalf of only the three children by Ralph's previous marriages, thereby giving Richard Raymond no share of the wrongful death proceeds. She argues that $5,500 was inadequate for the wrongful death cause, and she also disputes the validity of the provision in the order which directs payment of Richard Raymond's share of the interpleader suit to a bank rather than to her as guardian.

The court has authority to direct the terms for the settlement of claims of a ward or decedent in any estate proceedings under section 19—8 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 19—8). Illinois courts long ago determined that they had authority to order the compromise of litigation involving minors when settlement is in the best interest of the minor. (*Wolf v. Uhlemann* (1927), 325 Ill. 165, 156 N.E. 334; *Williams v. Williams* (1903), 204 Ill. 44, 68 N.E. 449.) Considering the risks involved if the litigation continued to trial, we certainly cannot say that the trial court acted contrary to the best interest of the minor. Not only is his claim as an heir of Ralph in serious doubt, but Economy's alleged liability under the homeowner's policy is predicated upon the assumption that Ralph and Cherry were married, which is a much-disputed fact. In the event it would be determined that Ralph and Cherry were never married, there would be no insurance coverage for the wrongful death action against Cherry.

The settlement ordered here provides Richard Raymond with $9,000 free of fees and costs. In the event his heirship is established, he will, of course, also receive his proportionate share of Ralph's estate, including a portion of the wrongful death settlement of $5,500. We believe these provisions are very much in the best interest of the minor and well within the discretion of the trial court.

As to the provision that the money is to be paid to a bank, we think this was a permissible condition for the trial court to impose under the circumstances. A petition to terminate the guardianship of Jean Lyons and to restore custody to Cherry Whittington was pending in the circuit court of La Salle County. The administrator of Ralph's estate, decedent's brother Baden Whittington, has an understandable preference for keeping any funds payable to the minor as a result of Ralph's death out of the hands of Cherry who was the perpetrator of the fatal injury. Placing the funds in a neutral banking institution seems to have been a good solution to the problem and one well within the discretion of the trial court.

Having concluded that the trial court did have jurisdiction to order the settlement and that the court did not abuse its discretion, we affirm the judgments which were the subject of this appeal.

Affirmed.

ALLOY and SCOTT, JJ., concur.